OPINION OF THE COURT
 

 Kaye, J.
 

 At issue is a question that has long been a subject of litigation: in negligent misrepresentation cases, which produce only economic injury, is privity of contract required in order for plaintiff to state a cause of action? Whether defendants are accountants (as in several recent cases) or not (as here), our answer continues to be that such a cause of action requires that the underlying relationship between the parties be one of contract or the bond between them so close as to be the functional equivalent of contractual privity. Such a bond having been alleged in the present action against engineers, we reverse the Appellate Division order and deny defendants’ motion to dismiss the complaint.
 

 Viewing the facts presented in a light most favorable to plaintiff, as we must at this stage of the proceeding, plaintiff school district alleges that in 1984, it began a general study and structural evaluation of its buildings. To that end, it
 
 *420
 
 entered into a written agreement with an architectural firm, codefendant Anderson LaRocca Anderson, whereby Anderson was hired to provide an evaluation and feasibility study of plaintiffs buildings; the contract authorized Anderson’s retention of consultants. Anderson retained the defendants, Thune Associates Consulting Engineers and Geiger Associates, P. C., as engineering consultants to assist in various aspects of the work it had undertaken for the school district. Although the school board authorized the retention of Thune and Geiger, neither defendant had a contract with the school district.
 

 This litigation arises from certain reports made by defendants following tests done on school district premises in order to determine the structural soundness of the high school annex. Specifically, defendant Thune and thereafter, at the school district’s request to Anderson, a second engineering firm — defendant Geiger — tested the concrete at various locations throughout the building. Both reported that there were serious weaknesses in the building, particularly the concrete slabs that formed the building’s superstructure, and Anderson informed the school district of those findings.
 

 It is alleged that defendants were aware that plaintiff would rely on their findings and that the intended purpose of defendant’s reports was in fact to enable the school district to determine what measures should be taken to deal with structural problems in its buildings. For safety reasons, the school district closed the annex and, purportedly at substantial expense, obtained other facilities for the dislodged activities. The school district, however, later retained a third independent expert to check the results, and that expert advised plaintiff that the annex had been constructed with a lightweight concrete known as "Gritcrete” rather than the 2,500 pound per square inch cement defendants had assumed and reported. According to plaintiff, this information was available to defendants in the original building design drawings and specifications which had been furnished to them. Had defendants read these materials rather than acting on their mistaken assumption as to the type of concrete used, they would not have made the reports and rendered the advice that eventuated in the unnecessary and expensive closing of the annex.
 

 The school district then began this lawsuit against Anderson and both engineering consultants. Claims of negligence and malpractice were asserted against all three. A claim for breach of contract was also asserted against Anderson, the
 
 *421
 
 only party with which plaintiff school district had a contract. Anderson, in its answer denying liability, asserted a cross claim against Thune and Geiger. Thune and Geiger moved for dismissal of the complaint as to them, asserting that absent contractual privity, neither the negligence nor the malpractice claim could be sustained. Supreme Court dismissed the complaint on that ground and the Appellate Division affirmed, citing the "long-standing general rule that recovery will not be granted to a third person for pecuniary loss arising from the negligent representations of a professional with whom he or she has had no contractual relationship.” (135 AD2d 518, 520.)
 

 According to the Appellate Division, this general rule has only one limited exception: under certain narrowly defined circumstances, accountants may be held liable to noncontractual parties who rely to their detriment on negligently prepared financial reports. In the Appellate Division’s view, accountants are singled out from the broad rule of nonliability only because of the central role they have come to play in the modern business community. That particular policy consideration being inapplicable to other professionals, the Appellate Division declined to "extend the exception” to defendant engineers, with whom plaintiff was not in a relationship of contractual privity
 
 (id.,
 
 at 521). For the reasons that follow, we conclude the Appellate Division erred.
 

 Courts have long struggled to define the ambit of duty or limits of liability for negligence, which in theory could be endless. While much of this struggle has been couched in the rhetoric of foreseeability of harm, under some circumstances foreseeability has appeared particularly inadequate for defining the scope of potential liability. In negligent misrepresentation cases especially, what is objectively foreseeable injury may be vast and unbounded, wholly disproportionate to a defendant’s undertaking or wrongdoing
 
 (see generally,
 
 Rabin,
 
 Tort Recovery for Negligently Inflicted Economic Loss: A Reassessment,
 
 37 Stan L Rev 1513 [1985]). In reaching the policy judgment called "duty”, courts have therefore invoked a concept of privity of contract as a means of fixing fair, manageable bounds of liability in such cases.
 

 Contractual privity as the basis for defining the ambit of duty in negligence cases derives from the famous case of
 
 Winterbottom v Wright
 
 (10 M & W 109, 152 Eng Rep 402 [Ex 1842]), a suit by an injured coachman against the supplier of a
 
 *422
 
 coach whose defective wheel had caused him injury. Although the action apparently sounded in tort, Lord Abinger relied primarily on the absence of a contract in denying recovery: "There is no privity of contract between these parties; and if the plaintiff can sue, every passenger, or even any person passing along the road, who was injured by the upsetting of the coach, might bring a similar action. Unless we confine the operation of such contracts as this to the parties who entered into them, the most absurd and outrageous consequences, to which I can see no limit, would ensue”
 
 (id.,
 
 at 114, 152 Eng Rep, at 405). While the privity limitation in part manifested an early preference for allocating sale of goods cases to the realm of contract rather than tort, it was plainly also informed by deep concern about the widespread liability to which a supplier would be exposed without some circumscribing principle
 
 (see,
 
 Rabin,
 
 Tort Recovery for Negligently Inflicted Economic Loss: A Reassessment, op. cit.,
 
 at 1529).
 

 Winterbottom v Wright
 
 soon became a leading case both in England and in this country. But just as rapidly, exceptions to the privity requirement developed
 
 (see, e.g., Devlin v Smith,
 
 89 NY 470;
 
 Loop v Litchfield,
 
 42 NY 351;
 
 Thomas v Winchester,
 
 6 NY 397;
 
 Huset v Case Threshing Mach. Co.,
 
 120 F 865, 867-871). In the landmark case
 
 MacPherson v Buick Motor Co.
 
 (217 NY 382), this court refused to apply the privity requirement to bar recovery by the driver of an automobile for injuries caused by a defective wheel the automobile manufacturer had negligently failed to inspect
 
 (see,
 
 Llewellyn, The Common Law Tradition: Deciding Appeals, at 430-437 [I960]). Distinguishing
 
 Winterbottom,
 
 Judge Cardozo wrote there was "nothing anomalous in a rule which imposes upon A, who has contracted with B, a duty to C and D and others according as he knows or does not know that the subject-matter of the contract is intended for their use.”
 
 (Id.,
 
 at 393.) Thereafter, the citadel of privity crumbled quickly in cases involving physical injury caused by defective products
 
 (see,
 
 Prosser,
 
 The Fall of the Citadel,
 
 50 Minn L Rev 791 [1966]).
 

 In theory, there appeared to be no reason why the privity bar should be dispensed with in cases such as
 
 MacPherson
 
 but retained in certain other types of negligence cases, and in
 
 Glanzer v Shepard
 
 (233 NY 236) we said as much. The defendants in
 
 Glanzer
 
 were public weighers hired by the sellers of beans to provide plaintiff with a certificate stating the weight of the beans. When defendants negligently misstated the weight, the buyers sued for the overpayment they
 
 *423
 
 had made in reliance on defendants’ inaccurate statement. Rejecting defendants’ claim that
 
 MacPherson
 
 applied only to products posing a risk of physical danger, Judge Cardozo wrote: "We do not need to state the duty in terms of contract or of privity. Growing out of a contract, it has none the less an origin not exclusively contractual. Given the contract and the relation, the duty is imposed by law”.
 
 (Id.,
 
 at 239.)
 

 In
 
 Glanzer,
 
 the particular relationship that was held to warrant imposition of a legal duty of care was found in the fact that "[t]he plaintiffs’ use of the certificates was not an indirect or collateral consequence of the action of the weighers. It was a consequence which, to the weighers’ knowledge, was the end and aim of the transaction” and that a copy of the certificate was sent to plaintiffs "for the very purpose of inducing action.”
 
 (Id.,
 
 at 238-239.) While noting that the plaintiffs might be analogized to third-party beneficiaries of the contract between the bean sellers and the defendants, the opinion stressed that the result was reached more simply by analyzing the duty owed by the defendants under the circumstances: "The defendants, acting, not casually nor as mere servants, but in the pursuit of an independent calling, weighed and certified at the order of one with the very end and aim of shaping the conduct of another. Diligence was owing, not only to him who ordered, but to him also who relied.”
 
 (Id.,
 
 at 242.)
 

 The ambit of duty was not, however, determined simply by the class of persons who relied on the negligent misrepresentations. As Chief Judge Cardozo wrote in
 
 Ultramares Corp. v Touche
 
 (255 NY 170), what was determinative in
 
 Glanzer
 
 was that there was a bond between plaintiff and defendant that was "so close as to approach that of privity, if not completely one with it.”
 
 (Id.,
 
 at 182-183.) In
 
 Ultramares,
 
 by contrast, the range of potential plaintiffs was "as indefinite and wide as the possibilities of the business that was mirrored in the summary.”
 
 (Id.,
 
 at 174.) That distinction led Chief Judge Cardozo to observe: "If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences.”
 
 (Id.,
 
 at 179-180.)
 

 
 *424
 
 While plaintiffs’ reliance might have been objectively foreseeable both in
 
 Glanzer
 
 and in
 
 Ultramares,
 
 the court chose to circumscribe defendants’ liability for negligent misstatements by privity of contract or its equivalent, because of concern for the indeterminate nature of the risk. That very concern, which has echoed in the law since
 
 Winterbottom,
 
 was also at the root of our recent decisions in
 
 Credit Alliance Corp. v Andersen & Co.
 
 (65 NY2d 536,
 
 mot to amend remittitur granted
 
 66 NY2d 812),
 
 Westpac Banking Corp. v Deschamps
 
 (66 NY2d 16) and
 
 Iselin & Co. v Mann Judd Landau
 
 (71 NY2d 420), which adhered to the rule articulated in
 
 Glanzer
 
 and
 
 Ultramares.
 

 In none of these cases, however, has the court erected a citadel of privity for negligent misrepresentation suits. Thus, the rule is not, as erroneously stated by the Appellate Division, that "recovery will not be granted to a third person for pecuniary loss arising from the negligent representations of a professional with whom he or she has had no contractual relationship”. (135 AD2d, at 520.) The long-standing rule is that recovery may be had for pecuniary loss arising from negligent representations where there is actual privity of contract between the parties or a relationship so close as to approach that of privity.
 

 Nor does the rule apply only to accountants. We have never drawn that categorical distinction, and see no basis for establishing such an arbitrary limitation now. It is true that in many of the cases involving claims for negligent misrepresentation, the defendants are accountants. Indeed, in attempting to fashion a rule that does not expose accountants to crippling liability, we have noted the central role played by that profession in the world of commercial credit. But while the rule has been developed in the context of cases involving accountants, it reflects our concern for fixing an appropriate ambit of duty, and there is no reason for excepting from it defendants other than accountants who fall within the narrow circumstances we have delineated. Notably,
 
 Glanzer
 
 itself did not involve a suit against accountants.
 

 The remaining question, then, is whether under
 
 Glanzer
 
 and our subsequent cases, defendants owed a duty of care to plaintiff that was breached by their alleged negligent performance. We have defined this duty narrowly, more narrowly than other jurisdictions
 
 (see, e.g., Rosenblum, Inc. v Adler,
 
 93 NJ 324, 461 A2d 138). We have declined to adopt a rule
 
 *425
 
 permitting recovery by any "foreseeable” plaintiff who relied on the negligently prepared report, and have rejected even a somewhat narrower rule that would permit recovery where the reliant party or class of parties was actually known or foreseen by the defendants
 
 (Credit Alliance Corp. v Andersen & Co.,
 
 65 NY2d, at 553, n 11). It is our belief that imposition of such broad liability is unwise as a matter of policy
 
 (see,
 
 Siliciano,
 
 Negligent Accounting and the Limits of Instrumental Tort Reform,
 
 86 Mich L Rev 1929) or, at the least, a matter for legislative rather than judicial reform.
 

 Instead, we have required something more, and we have articulated the requirement in various ways. In
 
 Glanzer,
 
 it was described as reliance by the plaintiff that was "the end and aim of the transaction.” (233 NY2d, at 238-239;
 
 see also, White v Guarente,
 
 43 NY2d 356, 362 ["one of the ends and aims of the transaction.”].) In
 
 Ultramares,
 
 we spoke of a bond "so close as to approach that of privity”. (255 NY, at 182-183.) Most recently, in
 
 Credit Alliance,
 
 we spelled out the following criteria for liability: (1) awareness that the reports were to be used for a particular purpose or purposes; (2) reliance by a known party or parties in furtherance of that purpose; and (3) some conduct by the defendants linking them to the party or parties and evincing defendant’s understanding of their reliance
 
 (Credit Alliance Corp. v Andersen & Co.,
 
 65 NY2d, at 551).
 

 For present purposes, the facts asserted in plaintiff’s submissions satisfy these prerequisites. Plaintiff alleges that through direct contact with defendants, information transmitted by Anderson, and the nature of the work, defendants were aware —indeed, could not possibly have failed to be aware — that the substance of the reports they furnished would be transmitted to and relied upon by the school district. Plaintiff asserts that that was the very purpose of defendants’ engagement.
 

 Though under contract to Anderson, defendants allegedly undertook their work in the knowledge that it was for the school district alone, and that their findings would be reported to and relied on by the school district in ongoing project — the evaluation of the structural soundness of the school buildings. Defendants were retained to visit plaintiff’s premises, examine its buildings, and prepare reports of their findings upon which action would be taken. The engagement of consultants was provided for in the contract between the school district and Anderson; the retention of defendants specifically was autho
 
 *426
 
 rized by the school board, and they were so informed; in seeking compensation, Geiger itself wrote "we were hired by [the school district]”, and it sent a bill directly to the school district.
 
 *
 
 Plaintiff further alleges that defendants had various types of contact directly with the school district. That, as well as the contents of some of Anderson’s communications with defendants, constitutes conduct linking defendants to plaintiff and evidencing their understanding of plaintiff’s reliance.
 

 Not unlike the bean weighers in
 
 Glanzer,
 
 defendants allegedly rendered their reports with the objective of thereby shaping this plaintiff’s conduct, and thus they owed a duty of diligence established in our law at least since
 
 Glanzer
 
 not only to Anderson who ordered but also to the school district who relied.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, the motions to dismiss the complaint as against defendants Thune Associates Consulting Engineers and Geiger Associates, P. C. denied, and the certified question answered in the negative.
 

 Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur; Chief Judge Wachtler taking no part.
 

 Order reversed, etc.
 

 *
 

 Given plaintiffs factual allegations of known reliance on the findings of both engineering consultants, Geiger’s argument that it was not engaged until after the school district had decided to close the annex, and thus could not be liable for plaintiffs losses, does not at this juncture entitle it to dismissal of the complaint.