Albert M. KLEIN, Blanche Tave and Daniel Slane, Plaintiffs,

v.

Harry E. GOETZMANN, Jr., John L. Bartolo, Lynn H. Smith, Henry A. Panasci, Jr., Chris J. Witting, Alvin O. Beiling, Robert C. Hayman, Thomas J. Prinzing and James J. Mosher, Defendants.

No. 88–CV–780.

United States District Court, N.D. New York.

Aug. 27, 1990.

Lowey Dannenberg Bemporad Brachtl & Selinger (Henry A. Brachtl, Richard C. Fooshee, of counsel), Abbey & Ellis (Joshua N. Rubin, of counsel), New York City, Berger & Montague (Gary E. Cantor, Lawrence Deutsch, of counsel), Philadelphia, Pa., Sugarman Wallace Manheim & Schoenwald (Timothy Perry, of counsel), Syracuse, N.Y., for plaintiffs.

Bond Schoeneck & King (Charles Beeching, Jr., George H. Lowe, Edward Ryan Conan, Jonathan B. Fellows, of counsel),

Syracuse, N.Y., for Goetzman, Bartolo and Prinzing.

Bangser Klein & Rocca (Jonathan J. Fink, of counsel), New York City, for Smith, Panasci, Witting, Beiling and Hayman.

Samuel B. Vavonese, Syracuse, N.Y., for Mosher.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### Introduction

Plaintiffs, shareholders in Continental Information Systems, Inc., have brought suit against certain of the corporation's officers and directors alleging that the defendants made material misrepresentations and omissions in information provided to the investing public, in violation of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and § 78t(a), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder. The plaintiffs also assert causes of action based in common law fraud and negligent misrepresentation. The defendants move to dismiss the consolidated amended complaint ("complaint") on the grounds that it fails to state a claim for relief under the federal securities laws and New York common law, and for failure to plead fraud with particularity as required by Fed.R.Civ.P. 9(b).

### Background

The plaintiffs, Albert Klein, Blanche Tave, and Daniel Slane, are representatives of a putative class of purchasers of stock of Continental Information Services, Inc. ("CIS"), during the period from April 29, 1987 through November 18, 1988. The defendants are nine individuals who were officers and/or directors of CIS during that period. The individual defendants were signatories to CIS's Securities and Exchange Form 10–K and the Annual Report to Shareholders for the fiscal year 1988, issued on or about May 12, 1988.

The factual background pertinent to this motion, as alleged in the complaint, is as follows:[1]

CIS's primary business was the leasing of computer equipment. Prior to the Tax Reform Act of 1986, the bulk of CIS's business deals involved arrangements with businesses to lease computer equipment, in which CIS would then sell 90 percent of that lease agreement to a bank. CIS would sell the remaining 10 percent of the lease agreement to a third party seeking a tax shelter. Instead of receiving lease payments, the 10 percent investor would receive the computer equipment's depreciation tax writeoffs, and half of the equipment's resale value when the lease expired. CIS would then buy the equipment and deliver it to the business, earning a commission on the deal. At the end of the lease, CIS would sell the equipment and split the residual value with the tax shelter investor.

The Tax Reform Act of 1986, however, eliminated the type of tax shelters CIS was providing, forcing the company to devise new strategies to earn its profits. These strategies included the acquisition of three companies in an attempt to diversify CIS's business. In August 1987, CIS acquired CMI Corp., a previous competitor. Also in FY 1988, CIS acquired Aviron Computer Technologies, Inc., a company which refurbished, reconfigured and modified computer equipment, and COM–PRO, another company in the computer field.

The 1988 Annual Report indicated a period of strong growth for CIS. According to the report, between the years 1986 and 1988, total revenues increased from $221,073,000 to $547,497,000; earnings before income tax increased from $18,028,000 to $27,718,000; and net earnings increased from $10,993,000 to $16,070,000. However, according to the plaintiffs, CIS improperly recorded the sale of an aircraft on its books in order to misrepresent its earnings in either FY 1987 or 1988.[2]

---

**1.** For the purposes of a motion to dismiss, the court must assume the truth of the plaintiff's factual allegations contained in the complaint. *Luce v. Edelstein,* 802 F.2d 49, 52 (2d Cir.1986).

**2.** Because of what appear to be typographical

Plaintiffs also include in the complaint several examples of representations made by the defendants which they allege indicate defendants' misrepresentations about the true condition of CIS's business. The representations cited by the plaintiffs are numerous, but some examples include:

—In the 1987 Annual Report, with respect to CIS's profits and revenues:

CIS anticipates EVEN more accelerated growth in the foreseeable future. This optimism is founded on the Company's remarketing strength in maximizing the residual value of all assets it manages.

—In the 1987 Annual Report, regarding the effects of the Tax Reform Act of 1986:

We have said that tax reform would be beneficial to our industry and continue to believe so ... our higher revenues and pre-tax earnings evidence that our outlook in this respect is correct. Prospects for the coming year are excellent. We look forward to continued growth in revenues and anticipate net income growth of approximately 30%.

—In a May 13, 1988, news release:

We anticipate that the current year will be an excellent one for the company. As the expanded sales organization and reorganized administrative support staff reach full stride, they do so at a time when the market for pre-owned computer, telecommunications and aircraft equipment is the strongest in the history of this business. We believe that demand for this equipment will continue at a high level over the foreseeable future. This demand should be a powerful stimulus for Continental's continuing growth in both revenues and earnings.

—In the 1988 Annual Report, regarding $105M in debt to become due and payable in FY 1989:

The Company is currently negotiating to "term out" that debt over a 10-year period. Management believes that some portion of the term loan will be subordinated debt and some will be senior debt.

Management is confident that this negotiation will be completed before the end of the second fiscal quarter of 1989.

On or about July 14, 1988, CIS filed a 10-Q Form with the Securities and Exchange Commission which stated that the company had suffered a loss of $7,521,000 for the first quarter of FY 1989. This statement was made approximately eight weeks after the statements in the May 13, 1988 news release and 1988 Annual Report. This loss translated into a loss of $.59 per share, as compared to a profit of $.23 per share for the first quarter of the previous year.

Following the commencement of this litigation, on or about January 13, 1989, CIS filed a Chapter 11 petition for reorganization in the U.S. Bankruptcy Court in the Southern District of New York. The plaintiffs in their complaint cite an affidavit filed with the petition by Thomas Prinzing, one of the defendants in the instant action and senior vice president-finance and principal financial officer of CIS, in which Prinzing states, *inter alia:*

The Debtors' financial difficulties and the reasons for filing their respective Chapter 11 petitions are principally as follows. Continental's acquisition of CMI Holding Co. was originally to be effectuated through both debt and equity financing. However, due to the "crash" suffered by the stock market in October 1987, Continental was unable to complete the contemplated equity financing. Thus, the acquisition of CMI Holding Co. was effectuated solely through debt financing, forcing the Debtors to incur higher interest expense than originally contemplated. In addition, although Continental's acquisition of CMI, Aviron and Com-Pro has diversified its business and enabled the Debtors to offer an expanded range of quality service to their clients, *these entities have not as yet been fully integrated. Excessive operating costs from lack of economies of*

errors in the complaint, it is difficult to discern on what dates the plaintiffs allege this improper accounting occurred. At oral argument, counsel apparently agreed that the sale described

was reported in FY 1987. Regardless of the actual date, the plaintiffs allege that the defendants intentionally recorded the sale on a false date to misrepresent CIS's earnings.

*scale and overlapping functions have unfortunately resulted. . . .*

. . . At the same time the Debtors were experiencing significantly higher operating costs as a result of the acquisition of CMI Holding Co., the Debtors' revenues were declining for the following reasons. *The enactment of the Tax Reform Act of 1986 greatly reduced the tax advantages traditionally enjoyed by equipment lessors, causing the Debtors to re-channel their marketing and sales efforts. In addition, as a result of operating losses for the first and second quarters of fiscal year 1989, accessibility to the investor market and the ability to use income vehicles to raise outside capital to support their cash needs were adversely curtailed.*

(Emphasis in original).

The plaintiffs allege that these statements and others contained in Prinzing's affidavit confirm that the causes of the sharp downturn in CIS's financial health were existing and recognized by the management long before their effects were revealed to the investing public in the summer of 1988. The plaintiffs further allege that the defendants acted individually and in concert to conceal adverse material information about the financial condition and future business prospects of CIS, in an effort to maintain an artificially high market price for CIS securities.

The defendants have moved for an order dismissing the complaint pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted under the Securities and Exchange Act of 1934 and New York common law, and, in the alternative, to dismiss the SEC and common law fraud claims for failure to plead fraud with particularity as required by Fed.R.Civ.P. 9(b).

*Discussion*

## I. *Motion to Dismiss*

The standards for considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) are well-settled. The motion is addressed to the face of the complaint, and the court must construe the complaint's allegations in the light most favorable to the plaintiffs and accept the well-pleaded factual allegations as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A claim will be dismissed under Rule 12(b)(6) only if it appears beyond doubt that the plaintiffs can prove no set of facts supporting their legal claim which will entitle them to relief. *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

## II. *Failure to State a Claim*

The defendants maintain that the plaintiffs have failed to state a claim upon which relief can be granted under Section 10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Act") and Rule 10b–5.[3] The defendants also argue that the

---

**3.** Section 10(b) makes it unlawful for any person to:

> use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). (1981 and 1990 West Supp.) Rule 10b–5 provides, in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange . . .
> . . . (b) To make any untrue statement of a material fact or to omit to state a material

fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1984).

Section 20(a), titled "Liability of controlling persons," states:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did

plaintiffs have not pleaded fraud with the particularity required by Fed.R.Civ.P. 9(b). More particularly, the defendants claim that plaintiffs' allegations that the defendants failed to accurately predict CIS's performance are not actionable under those sections or under common law fraud.

■ The Second Circuit has insisted that complaints alleging fraudulent violations of Section 10(b) and Rule 10b–5 must satisfy the particularity requirement of Rule 9(b). *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982); *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557–59 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 *reh'g denied*, 448 U.S. 911, 100 S.Ct. 3057, 65 L.Ed.2d 1140 (1980). Thus, the court will consider the two prongs of defendants' motion concomitantly. To state a claim under Section 10(b), the plaintiffs must allege acts indicating an intent to deceive, manipulate, or defraud, and Rule 9(b) requires that the circumstances constituting the fraud be stated with particularity.[4] *Decker v. Massey-Ferguson*, 681 F.2d at 115. The factual foundation for the fraud claims must be pleaded. *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988). Pleadings of fraud may not generally be based upon information and belief, but, on the other hand, they may be so pleaded when the facts constituting the fraud allegations are "peculiarly within the opposing party's knowledge; even then, however, the allegations must be accompanied by a statement of the facts upon which the belief is founded." *Id.* Great specificity as to knowledge and scienter on the part of the defendants is not required, since, as Rule 9(b) states, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred gener-

ally." *Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir.1985).

■ Failure to accurately predict future business developments is generally not actionable under Section 10(b) and Rule 10b–5. *See, e.g., Decker v. Massey-Ferguson*, 681 F.2d at 116–18; *Crystal v. Foy*, 562 F.Supp. 422, 429 (S.D.N.Y.1983); *Schwartz v. Novo Industri, A/S*, 658 F.Supp. 795, 798–99 (S.D.N.Y.1987) ("a judgment subsequently found to have been overly optimistic" is not a basis for a fraud claim under Rule 10b–5); *Marbury Management, Inc. v. Kohn*, 470 F.Supp. 509, 512–13 (S.D.N.Y.1979) ("the mere fact that the defendant's predictions did not materialize" does not "indicate that the statements were untrue at the time of issuance"), *aff'd in part, rev'd in part on other grounds*, 629 F.2d 705 (2d Cir.), *cert. denied*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980).

■ The basis for plaintiffs' claims, however, is not bad business judgment. The plaintiffs allege that the defendants made a series of very positive predictions as to CIS's future when circumstances suggested that the company's future was, at best, unclear. The plaintiffs point to, in particular, an alleged improper accounting practice to misrepresent the company's earnings, and the statements by Mr. Prinzing in his affidavit which plaintiffs maintain indicate the company's awareness of certain business problems which were intentionally concealed from the investing public. The Second Circuit considered similar allegations in *Goldman v. Belden*, 754 F.2d 1059 (2d Cir.1985), a case cited by the plaintiffs here. The subject of the complaint in *Goldman* was the marketing of a telephone system designed to aid hotels in registering their guests' long-distance calls. The complaint alleged that, despite positive predictions about the success of the system

---

not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a) (1981 and 1990 West Supp.). The parties did not address whether the defendants are "controlling persons" within the meaning of Section 20(a), and the court will therefore not treat that issue. The analysis will be confined to the alleged violations of Section 10(b) and Rule 10b–5.

**4.** Rule 9(b) of the Federal Rules of Civil Procedure requires that:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

by the corporation's officers and directors in annual reports and other statements, the corporate officers knew or should have known of flaws in the marketing program and in the telephone system which ultimately caused the program to fail. The alleged flaws in the telephone system were detailed in the complaint. The complaint further alleged that the positive predictions about the system's success were made falsely or with reckless disregard for the truth because of the facts within the officers' and directors' knowledge. The court held in *Goldman* that, given the defendants' positive predictions, and the plaintiffs' allegations of knowledge of undisclosed negative factors, the complaint adequately stated a claim under Section 10(b) and Rule 10b-5. The court stated:

> Liability may follow where management intentionally fosters a mistaken belief concerning a material fact, such as its evaluation of the company's progress and earnings prospects in the current year.

*Id.* at 1069 (quoting *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156 (2d Cir.1980)).

In the instant case, plaintiffs allege that the defendants made very positive statements about CIS's future when in fact they knew of circumstances that made the company's prospects unclear. As in *Goldman*, defendants' positive statements here may not be as unqualified as the complaint alleges. However, the actual effect of the statements on the investing public goes toward their materiality, which is a mixed question of law and fact that would be inappropriate to answer as a matter of law. *See Goldman*, 754 F.2d at 1068. The allegations of the positive predictions made by the defendants, coupled with factual allegations that the defendants knew of and did not disclose negative factors, adequately state a claim under Section 10(b) and Rule 10b-5. *See id.* at 1069. Accordingly, the defendants' motion to dismiss as to the Section 10(b) and Rule 10b-5 claims is denied.

### III. *Pendent State Law Claims*

The plaintiffs also allege causes of action based in common law fraud and negligent misrepresentation. The defendants do not address the common law fraud claim separately from the Section 10(b) fraud claim. Consequently, for the reasons stated above, defendants' motion to dismiss the common law fraud claim is denied as well.

■ The defendants argue that the negligent misrepresentation claim should be dismissed because there is no relationship between plaintiffs and the defendants which would give rise to a duty on the part of the defendants. The defendants cite in support of this proposition the New York Court of Appeals decision in *Ossining UFSD v. Anderson*, 73 N.Y.2d 417, 541 N.Y.S.2d 335, 539 N.E.2d 91 (1989), in which the court stated that recovery may be had on a claim for negligent misrepresentation only where the parties stand in "a relationship so close as to approach that of privity." *Id.* at 424, 541 N.Y.S.2d at 338, 539 N.E.2d 91. The rule reaffirmed in *Ossining* actually is more accurately stated as follows:

> recovery may be had for pecuniary loss arising from negligent representations *where there is actual privity of contract* or a relationship so close as to approach that of privity.

*Id.* (emphasis added).

The plaintiffs note that the relationship between shareholders and a corporation is recognized in New York as a *contractual* relationship, and thus actual contractual privity would exist here. *See Application of Stewart Becker, Ltd.*, 94 Misc.2d 766, 405 N.Y.S.2d 571, 574 (Sup.Ct. Suffolk County 1978). In addition, the fiduciary obligation of corporate officers and directors to corporate shareholders is well-recognized.

■ In the instant case, however, the plaintiffs and the putative class they represent were not stockholders of CIS until they purchased stock allegedly relying on negligent misrepresentations made by the defendants. Thus, the defendants argue, the negligent misrepresentations complained of here were made, if at all, to the general investing public. The plaintiffs do not cite, and the court did not locate, any New York authority for the proposition that corporate officers and/or directors owe a duty to the general investing public,

in addition to their fiduciary obligations to the corporation and its shareholders. The court is persuaded that officers' and directors' liability for negligent misrepresentations does not extend that far. As the New York Court of Appeals stated in *Ossining*, "[w]e have declined to adopt a rule permitting recovery by any 'foreseeable' plaintiff who relied on the negligently prepared report, and have rejected even a somewhat narrower rule that would permit recovery where the reliant party or class of parties was actually known or foreseen by the defendants." *Ossining*, 73 N.Y.2d at 424–25, 541 N.Y.S.2d at 339, 539 N.E.2d at 95. As previously stated, the Court of Appeals has adopted a more stringent requirement that the plaintiff show actual privity or a "relationship so close as to approach that of privity," *id.* at 424, 541 N.Y.S.2d at 338, 539 N.E.2d at 94, which does not exist here. Thus, the defendants' motion to dismiss the cause of action based in negligent misrepresentation is granted.

### Conclusion

The motion to dismiss is granted as to plaintiffs' common law negligent misrepresentation claim, and denied as to the remainder of plaintiffs' claims.

IT IS SO ORDERED.