RANCO MANAGEMENT
CORPORATION, Plaintiff–Appellant,

v.

DG INVESTMENT BANK LTD.,
Defendant–Appellee.

No. 93–3161.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 28, 1994.

Decided Feb. 28, 1994.

**884**

Philip A. Brown (argued and briefed), Vorys, Sater, Seymour & Pease, Columbus, OH, for plaintiff-appellant Ranco Management Corp.

James A. Meaney, Thompson, Hine & Flory, Columbus, OH, Barry J. Trilling (argued and briefed), Doepken, Keevican, Weiss & Medved, Pittsburgh, PA, for defendant-appellee DG Investment Bank Ltd.

Before: KENNEDY, JONES and SUHRHEINRICH, Circuit Judges.

KENNEDY, Circuit Judge.

Plaintiff Ranco Management Corp. appeals the District Court's summary judgment order dismissing plaintiff's claims for negligent misrepresentation, fraud and breach of contract against defendant DG Investment Bank Ltd. For the reasons stated below, we affirm.

### I.

Defendant is a New York unincorporated agency of DG Investment Bank Ltd., a foreign banking corporation located in London, England and incorporated in the United Kingdom, that matches sellers of corporate stock with potential buyers. In December 1989, defendant's senior vice president Andrew Dalski learned that Industries–Werk Karlruhe Augsburg AG ("IWKA"), a German company had acquired 42.9% of Bopp & Reuther AG ("B & R"), another German company. After IWKA's purchase, B & R's stock was divided into three groups: IWKA owned 42.9%; the Reuther family owned 32% and the Hannover Finanz Group ("Hannover

Finanz") owned 25.1%.[1] After learning of this acquisition, Dalski contacted Carl–Friedrich Reuther, Chairman and Co–Chief Executive Officer of B & R and a member of the Reuther family. During January 1990, Reuther and Dalski discussed the possible sale of the B & R stock owned by the Reuther family and by Hannover Finanz. Dalski did not speak directly to any representative of Hannover Finanz.

IWKA sought to obtain control of B & R and offered to purchase the Reuther family shares and the Hannover Finanz shares for 140% of its nominal value. In January 1990, the Supervisory Board of B & R met and discussed IWKA's efforts to obtain control of B & R. Hannover Finanz' chairman approved a resolution that authorized the exploration of industrial alternatives other than IWKA.

Subsequently, the defendant was retained by Reuther to find a purchaser for the Reuther family and the Hannover Finanz shares. Without revealing the identity of its client, defendant contacted several potential buyers, including the plaintiff, with regard to the acquisition of the controlling shares. In its initial communications, defendant told plaintiff that controlling shares in an unidentified client were available for purchase. In fact, plaintiff was not interested in purchasing a minority position in any company.

After the plaintiff expressed an interest in obtaining additional information about the unidentified company, the defendant transmitted additional information in a letter dated February 2, 1990. This letter stated, "[a]s discussed in our phone conversation, the following four pages should give you a clearer description of the German company which currently has 57% of its stock available for acquisition." In order to receive additional information on the unidentified German company, plaintiff executed a confidentiality agreement. The confidentiality agreement provided that, in consideration of the disclosure by the defendant of non-public, confidential or proprietary information about B &

---

1. Prior to February 1989, the Reuther family and Hannover Finanz executed a shareholder agreement in which neither could sell to a third party without giving the other the option to purchase and obtaining the other's approval.

R, plaintiff would keep that information confidential.

On March 6, 1990, plaintiff's parent, Siebe, made an offer for the Reuther family and Hannover Finanz shares. However, the March 6 offer contained conditions and was rejected due to its conditional nature. On March 14, 1990, the Reuther family offered to purchase the Hannover Finanz stock at 170% of its nominal value. At the same time, Siebe offered 195% of nominal value for the stock of the Reuther family and Hannover Finanz. On March 19, 1990, Hannover Finanz rejected the Reuther offer. When informed of the Siebe offer, Hannover Finanz indicated that it would not accept offers at any price and, pursuant to the shareholders agreement, would permit the Reuther family to sell its shares to IWKA only. Subsequently, the Reuther family sold its shares to IWKA at 180% of their nominal value.

Plaintiff filed suit, seeking recovery of internal and external costs incurred as a result of the effort to acquire B & R, arguing that defendant's statement in early February 1990 that controlling shares in B & R were available amounted to fraud. Plaintiff also asserted a cause of action for negligent misrepresentation, claiming that defendant failed to exercise reasonable care or competence in obtaining or communicating information about the availability of controlling shares to plaintiff. Finally, plaintiff contends that defendant breached its agreement to provide information concerning the controlling interest in an unidentified company.

Defendant moved for summary judgment on all claims. The District Court granted the defendant's motion as to the fraud claim finding that plaintiff had failed to produce any evidence that defendant intended to defraud plaintiff. Subsequently, the District Court also dismissed the plaintiff's negligent misrepresentation and contract claims ruling that these claims were barred as a matter of law by the disclaimers contained in the confidentiality agreement and cover letter. This timely appeal followed.

## II.

This Court reviews a District Court's grant of summary judgment de novo, "making all reasonable inferences in favor of the nonmoving party to determine if a genuine issue of material fact" exists. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Viewing the evidence in the light most favorable to the nonmoving party, this Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## III.

The plaintiff initially claims the defendant's representations that a controlling interest in B & R was available for purchase constituted negligent misrepresentation and the District Court erroneously granted summary judgment in favor of the defendant.

With regard to the negligent misrepresentation claim, the New York courts have stated,

[a]s to duty imposed, generally a negligent statement may be the basis for recovery of damages, where there is carelessness in imparting words upon which others were expected to rely and upon which they did act or failed to act to their damage ... but such information is not actionable unless expressed directly, with knowledge or notice that it will be acted upon, to one to whom the author is bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at all....

*Mallis v. Bankers Trust Co.*, 615 F.2d 68, 82 (2d Cir.1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981) (citing *White v. Guarente*, 43 N.Y.2d 356, 401 N.Y.S.2d 474, 478, 372 N.E.2d 315, 319 (1977)).

The District Court granted the defendant's summary judgment motion dismissing the plaintiff's negligent misrepresentation claim

because it concluded that the plaintiff could not establish the reasonable reliance element of negligent misrepresentation as a matter of law.[2] The District Court held that the disclaimers contained in the confidentiality agreement and cover letter specifically applied to the information conveyed plaintiff concerning the availability of the shares. The confidentiality agreement stated that,

[i]t is understood and agreed that we [defendant] are under no obligation to verify the accuracy of any of the Information, make no representation or warranty of any kind, and shall have no liability with respect to the accuracy, completeness or sufficiency of the Information.

"Information" is defined in the agreement as non-public, confidential or proprietary information. The confidentiality agreement also contained a general merger clause. This clause stated, "[t]his agreement constitutes the entire agreement of the parties hereto and supersedes all prior agreements of the parties relating to the subject matter hereof. This agreement shall be governed by and construed in accordance with the laws of New York."

Pursuant to the confidentiality agreement, the defendant provided the plaintiff with a confidential memorandum containing information compiled by B & R. The cover sheet to this memorandum stated,

[t]his memorandum provides certain summary information regarding Bopp & Reuther AG. Such information contained herein has been obtained from Bopp & Reuther AG and industry sources deemed reliable. DG Investment Bank Ltd makes no representation or warranty as to the accuracy or completeness of the information contained herein. The purpose of this memorandum is simply to provide information to prospective purchasers of 57% of the Common Stock of Bopp & Reuther AG. It is expected that prospective purchasers will conduct their own investigation of Bopp & Reuther AG.

The District Court reasoned that the plaintiff had agreed that defendant would not be liable for the "accuracy, completeness or sufficiency" of the non-public, confidential or proprietary information. The District Court also noted that the plaintiff's claims are based on

the alleged inaccuracy of Defendant's representation that controlling shares in B & R were available as of early 1990. That representation was based on information communicated to Defendant by Carl–Friedrich Reuther pursuant to an agreement with Defendant that Defendant would assist Mr. Reuther in locating a purchaser for shares in B & R. To the extent that the information was not made public by Mr. Reuther himself, the information must be considered proprietary and non-public and is, thus covered by the disclaimer.

Under New York law, when "an express provision in the written contract contradicts the claimed oral representations in a meaningful fashion ... the conflict between the provisions of the written contract and the oral representations negates the claim of reliance upon the latter." *Bango v. Naughton*, 184 A.D.2d 961, 584 N.Y.S.2d 942, 944 (1992). Plaintiff concedes that if the disclaimers specifically apply to the availability of shares of B & R as a matter of law, its claims are barred. However, plaintiff argues that the disclaimers only apply to the confidential information regarding B & R's products, business and finances which defendant would not release until a confidential relationship existed. Plaintiff contends that the disclaimers do not apply to the representation that controlling shares were available because defendant disclosed this prior to the execution of the confidentiality agreement and therefore this did not constitute confidential information.

■ We conclude that the availability of controlling shares of stock constituted non-

---

**2.** With regard to the effect of the disclaimers, the District Court applied New York law to the plaintiff's negligent misrepresentation claim and breach of contract claim because the confidentiality agreement contained a provision designating New York as their choice of law. While plaintiff contends that Ohio law should apply, the plaintiff concedes that the differences between New York and Ohio law are not material in this instance. Thus, we will also analyze these issues under New York law.

public, confidential or proprietary "Information." The confidentiality agreement defines *public* information as

[i]nformation which (a) is or becomes generally available to the public other than as a result of a disclosure by you [plaintiff] or your representatives; (b) becomes available to you on a non-confidential basis from a source other than us or one of our agents or (c) was known to you on a non-confidential basis prior to its disclosure to you by us or one of our agents.

The plaintiff apparently only became aware of the potential sale of stock through contact with the defendant and therefore this information would not constitute public information. Additionally, in consideration of the disclosure of the "Information," the plaintiff agreed to keep in confidence "any of the Information including the fact that the Company is considering a transaction which could involve a sale of stock in that entity." If the defendant believed the fact that B & R was considering a sale of stock confidential information, certainly the number of shares in the potential transaction constituted confidential information. We conclude that the availability of controlling shares was confidential, non-public, proprietary "Information." Thus, the parties agreed that the defendant would not have liability with regard to the accuracy, completeness or sufficiency of the "Information" which precludes plaintiff's reliance as a matter of law on the defendant's representations regarding the availability of controlling shares in B & R. We therefore affirm the District Court's summary judgment order dismissing the plaintiff's negligent misrepresentation claim.

As additional support for our conclusion, we also note that the initial page of the confidentiality agreement disclaimed responsibility with regard to "information contained herein." On the very next page, the defendant refers to the availability of a controlling interest in B & R. Thus, the availability of shares constitutes "information contained herein" and is for this reason as well covered by the disclaimers.

■ The plaintiff's negligent misrepresentation claim with regard to communications made prior to the execution of the confiden-

tiality agreement fails for an additional reason. In order to succeed on a negligent misrepresentation claim, the plaintiff must establish that it is in privity or in a relationship that "is so close as to approach that of privity." *Ossining Union Free School Dist. v. Anderson,* 73 N.Y.2d 417, 541 N.Y.S.2d 335, 338, 539 N.E.2d 91, 94 (1989) (citations omitted). With regard to the communications made prior to the execution of the confidentiality agreement, the defendant contends that the plaintiff cannot maintain its negligent misrepresentation claim as a matter of law because plaintiff has failed to produce evidence that the defendant and plaintiff were in privity or had a sufficiently close relationship.

In its initial communications to the plaintiff and approximately 50 other prospective purchasers, the defendant merely stated that 57% of the shares of an *unidentified company* were available for purchase. In a letter dated February 2, 1990, the defendant transmitted information concerning the defendant's as yet unidentified client. This letter stated, "[a]s discussed in our phone conversation, the following four pages should give you a clearer description of the German company which currently has 57% of its stock available for acquisition." In this letter, the defendant disclosed essential facts about the still as yet unidentified company such as the general market and number of personnel.

The New York courts have distilled the following criteria in determining whether a sufficiently close relationship exists in the absence of privity. To impose liability, there must be "(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance." *Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood,* 80 N.Y.2d 377, 590 N.Y.S.2d 831, 834, 605 N.E.2d 318, 321 (1992) (citations omitted).

We conclude that a sufficiently close relationship did not exist between the plaintiff and the defendant. By its limited communi-

cations about an unidentified company, the defendant would not be aware that its statements, that an unidentified company is interested in selling a controlling interest of its shares, would be used for a particular purpose or that plaintiff would rely on this communication in furtherance of some purpose. The defendant could not expect the plaintiff to undertake an extensive investigation into B & R because the defendant had not even disclosed the company's identity. Rather, in this context, defendant was merely soliciting interest for the potential purchase of an unidentified company. Thus, we conclude that the defendant's limited communications, that controlling interest in an unidentified company was available for purchase, are insufficient to establish that special relationship approaching privity. Indeed, one court has recently stated, "[n]either an ordinary contractual relationship nor a banking relationship, without more, is sufficient to establish a 'special relationship,' which only occurs in the context of a previous or continuing relationship between two parties." *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank,* 819 F.Supp. 1282, 1293 (S.D.N.Y.1993). These limited communications concerning an unidentified company do not establish a previous or continuing relationship.

We conclude that the plaintiff cannot prove its negligent misrepresentation claim with regard to the communications made prior to the execution of the confidentiality agreement. Although the District Court did not address this argument with regard to these communications, we may affirm the order of summary judgment on other grounds. *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.,* 772 F.2d 214, 216 (6th Cir.1985) (per curiam).

### IV.

■ Plaintiff next argues that the confidentiality agreement required defendant to provide information for a company in which control was available for purchase. In fact, plaintiff contends that it entered the confidentiality agreement based on representations that 57% of the stock of an unidentified company was available for purchase. Be-

cause a controlling interest was not actually available for sale, plaintiff argues that the defendant breached their agreement.

The District Court granted summary judgment for the defendant on this breach of contract claim. The District Court concluded that the disclaimer, see n. 3, precluded liability based on inaccuracy or incompleteness of the information provided.

We conclude that the District Court correctly granted summary judgment for the defendant on this breach of contract claim. Plaintiff stated in the disclaimer that it was not relying on the accuracy or completeness of the "Information" provided by the defendant. As discussed in the previous section, the disclaimer of accuracy or completeness of "Information" included the defendant's representation that controlling shares were available for purchase. Thus, the plaintiff's claim that the defendant breached the contract by representing that a controlling interest was available, was indisputably contradicted by the terms of the contract. *Cf. Manchester Equip. Co. v. Panasonic Indus. Co.,* 141 A.D.2d 616, 529 N.Y.S.2d 532 (1988). We therefore affirm the District Court's order granting summary judgment for the defendant.

■ Except as provided by their agreement, we also note that no fiduciary relationship exists between these parties by virtue of their relationship. In *Northeast General Corp. v. Wellington Advertising, Inc.,* 82 N.Y.2d 158, 604 N.Y.S.2d 1, 624 N.E.2d 129 (1993), plaintiff Northeast sought to recover its finder's fee based on its finder-seller agreement with the defendant. However, the defendant argued that the plaintiff was not entitled to its finder's fee because Northeast failed to disclose adverse reputational information about the prospect tendered to the defendant. The New York Court of Appeals concluded that plaintiff was entitled to its finder's fee stating, "[u]nless the particular agreement establishes a relationship of trust, one will not spring from a finder's contract in and of itself for without some agreed-to nexus, there is no relationship of trust and, thus, no duty of highest loyalty." *Id.* at 160, 604 N.Y.S.2d 1, 624 N.E.2d 129.

If no fiduciary relationship exists between a *seller* and a finder, except as provided by contract, we are confident that a New York court would find no fiduciary relationship existed between the defendant DG Investment Bank and the prospective *purchaser,* Ranco.

## V.

■ The plaintiff next alleged that the defendant's statements, in early February 1990, that a controlling interest in B & R stock was available amounted to fraud.[3] Under New York law, the elements of fraud are a "representation of material existing fact, falsity, scienter, deception and injury." *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.,* 4 N.Y.2d 403, 176 N.Y.S.2d 259, 261, 151 N.E.2d 833, 835 (1958). Scienter exists when the misrepresentation is untrue and known to be untrue or recklessly made. *See Jo Ann Homes at Bellmore, Inc. v. Dworetz,* 25 N.Y.2d 112, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214, 217 (1969). The District Court granted defendant's summary judgment motion on the plaintiff's fraud claim because the plaintiff failed to produce evidence that the defendant knew the information was false when it provided the information or that it acted recklessly in making the representation. The District Court stated:

> Defendant's business depends upon its success in matching sellers of stock with potential buyers. The only conceivable reason for Defendant to intentionally mislead a client would be ill will toward the client. Plaintiff has presented no evidence of animosity between the two parties prior to the incident of which Plaintiff complains. In fact, the evidence reveals a positive relationship existed. Plaintiff could only establish the scienter element of the fraud cause of action by allegation.

The plaintiff contends that the District Court was erroneous for two reasons. First, the plaintiff argues that the District Court misunderstood who the defendant's client was. Second, the District Court misunderstood plaintiff's proffered proof of intent and the supporting testimony of its expert witness.

■ With regard to the plaintiff's first allegation of error, both parties agree that plaintiff was not the defendant's client. However, even if the plaintiff was not the defendant's client, the defendant still had an interest in maintaining its positive business reputation. Furthermore, the fact that the plaintiff was not the defendant's client does not indicate that the defendant knew that the information provided was false or acted recklessly in making the representation. Thus, we reject the plaintiff's first contention.

■ The plaintiff next argues that the District Court erred in dismissing its fraud claim because it has offered proof of the defendant's intent to defraud. Specifically, plaintiff relies on its expert's testimony. Plaintiff's expert testified that, in his opinion, the defendant simply used plaintiff as an appraiser for the Reuther family's share of B & R stock. The plaintiff argues that defendant pursued an offer for the shares which valued the shares higher than IWKA's initial offering price. As a result of plaintiff's higher offer, IWKA increased its offering price. The Reuther family then sold its shareholdings to IWKA and the defendant received a significant commission. To support this theory, plaintiff argues that minority interests in closely-held corporations are difficult to sell. Additionally, plaintiff produced evidence that the Reuther family was under extreme pressure to sell the 32% minority interest to the 43% shareholder, IWKA.

Plaintiff's theory of intent to defraud is simply not supported by any facts. There is no evidence that the defendant sought only to establish a price for a minority interest in B & R. Furthermore, the mere fact that the defendant received a commission from the Reuther family does not lead to the conclusion that the defendant intentionally misrep-

---

3. The District Court did not decide whether Ohio or New York law applied to the plaintiff's fraud claim. Rather, the District Court concluded that the scienter element of the fraud claim constitut- ed the dispositive issue and the scienter standard was substantially similar under both Ohio and New York law. For ease of analysis, we simply refer to New York law.

resented what controlling shares were available.

Indeed, defendant concedes that the only person with whom it had contact regarding the proposed sale of control were representatives of the Reuther family. However, in January 1990, at a supervisory board meeting of B & R, Hannover Finanz denied that it had agreed to sell its shares to IWKA and joined in approving a resolution that authorized the exploration of industrial alternatives other than IWKA. Pursuant to this resolution, Reuther and Dalski executed an agreement in which he retained the defendant to assist in finding a purchaser for the stock owned by the Reuther Group and Hannover Finanz. Dalski also stated that he did not become aware of Hannover Finanz's refusal to sell its shares until after March 19, 1990. Further, Dalski stated that he would not have agreed to provide assistance in connection with the sale of B & R stock if he had believed or known that less than a majority of the stock was available for sale.

Consequently, we agree with the District Court that the plaintiff has failed to produce evidence of the defendant's knowledge that its representation was false or that it was reckless when it made the representation.

## VI.

For the reasons stated, we AFFIRM.