OPINION OF THE COURT
Simeon Golar, J.
In this action to recover damages for negligence, defendant Alfredo LaPorta, M.D., seeks an order granting summary judg *959 ment dismissing the complaint, pursuant to CPLR 3211 (a) (7) and 3212 and, in the alternative, seeks an order staying this action pending a final disposition in an action entitled Barbarito v Western Queens Community Hosp. (index No. 22690/ 95). Codefendant Nafees Khan Pervez, M.D., cross-moves for an order granting the identical relief. Codefendant Western Queens Community Hospital separately moves pursuant to CPLR 3211 (a) (7) for an order granting the identical relief. These motions are consolidated for the purpose of this decision.
This action was brought following a medical malpractice action commenced in October 1995 by Geraldine Barbarito and Frank Barbarito against the parties to this action and other physicians. On May 25, 1995 Geraldine Barbarito consulted Dr. Nabil Megally regarding a lump in her right breast. A routine mammography was performed on May 31, 1995, and on June 19, 1995 Dr. Megally performed a biopsy on Mrs. Barbarito’s right breast at Western Queens Community Hospital. A tissue sample was examined in the hospital’s pathology laboratory by Dr. LaPorta, the then Chief of the Pathology Laboratory, and by Dr. Pervez. Drs. Megally and LaPorta initially determined that the biopsy tissue sample was benign. On June 20, 1995 Dr. Pervez sent a written report to Dr. Megally which stated that the breast tissue specimen was malignant. Dr. LaPorta, at the request of Dr. Megally, reexamined the patient’s slides, and determined that the breast tissue specimen was malignant. Dr. Megally informed Mrs. Barbarito of the biopsy results, and she obtained a further independent opinion from a surgeon who also recommended surgery. On July 10, 1995, Dr. Megally performed a modified right radical mastectomy upon Mrs. Barbarito at the hospital. On September 5, 1995 Mrs. Barbarito was informed by the hospital that the pathology sample was in fact benign. Mrs. and Mr. Barbarito commenced their malpractice action against the hospital and doctors in October 1995. The Barbaritos also publicized the hospital’s and doctors’ actions on television and radio and through other news media.
In April 1996 Dr. Megally commenced this action for common-law negligence in which he seeks to recover damages for economic harm to his reputation and medical practice and for loss of income, arising out of the Barbarito surgery. Dr. Megally asserts that Drs. LaPorta and Pervez negligently misdiagnosed Mrs. Barbarito’s condition, and that, in reliance on their incorrect pathology reports, he performed unnecessary surgery on Mrs. Barbarito. He further asserts that, as a result of the defendants’ negligence and the adverse publicity, *960 he sustained harm to his professional reputation and a loss of income. Dr. Megally alleges, also, that the defendant hospital negligently supervised the defendant pathologists and the pathology laboratory and is also liable for the acts of the defendant pathologists.
Dr. Megally’s claims, in essence, are based on the novel theory that the defendant pathologists had an affirmative legal duty of due care for the benefit of their colleagues identical to the duty of due care owed to a patient.
Defendants LaPorta and Pervez now seek an order granting summary judgment dismissing the complaint on the ground that it does not set out a legally cognizable claim for negligence. They assert that a treating surgeon, unlike a patient, does not have a legal right (which gives rise to any cause of action) to rely upon the diagnosis of a pathologist who examines a biopsy specimen at the patient’s or surgeon’s request, and that no duty of due care exists which runs from the defendant pathologists in this case to the plaintiff surgeon. Defendant hospital also seeks to dismiss the complaint pursuant to CPLR 3211 (a) (7), and asserts that it owed the plaintiff no direct duty of due care. The defendants also argue that plaintiff’s claims for economic loss are purely speculative and incapable of being established, and that for that reason also, the complaint must be dismissed. In the alternative, defendants seek a stay of this action pending the outcome of the Barbarito malpractice action.
Plaintiff, in opposition and support of his claim, argues that defendants owed him a duty of due care, as they knew that he was relying on them to properly analyze and report on the tissue sample of his patient; and that, had he been provided with a correct report, he would not have performed the surgery on Mrs. Barbarito. He further argues that defendants’ negligence resulted in widespread publicity which adversely affected his professional reputation and caused a permanent loss of income, and that, while his economic losses may be difficult to quantify, they can be determined upon presentation of expert testimony to a jury. In the latter connection, concerning damages, he asserts that in the months following media publicity, seven breast surgeries he was scheduled to perform were canceled; that he thereafter performed fewer breast surgeries and had fewer referrals; that his acceptance into several HMDs was delayed due to an investigation in connection with the Barbarito surgery; and that he has spent over $17,000 in legal fees.
It is well settled that "a duty of reasonable care owed by the tort-feasor to the plaintiff is elemental to any recovery in *961 negligence (see, e.g., Pulka v Edelman, 40 NY2d 781, 782; Palsgraf v Long Is. R. R. Co., 248 NY 339, 344). Foreseeability of injury does not determine the existence of duty (Strauss v Belle Realty Co., 65 NY2d 399, 402). Unlike foreseeability and causation, which are both generally factual issues to be resolved on a case-by-case basis by the fact-finder, the duty owed by one member of society to another is a legal issue to be determined by the court (De Angelis v Lutheran Med. Ctr., 58 NY2d 1053, 1055; Eiseman v State of New York, 70 NY2d 175, 187).” (Adams v Elgart, 213 AD2d 436, 437.)
The Court of Appeals has held certain professionals liable for negligent misrepresentation (Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood, 80 NY2d 377 [attorneys]; Ossining Union Free School Dist. v Anderson LaRocca Anderson, 73 NY2d 417, 424 [accountants; engineering consultants]). However, the Court of Appeals has consistently held that "before a party may recover in tort for pecuniary loss sustained as a result of another’s negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity (see, e.g., Ossining Union Free School Dist. v Anderson LaRocca Anderson, supra, at 424; Credit Alliance Corp. v Andersen & Co., 65 NY2d 536; Utramares Corp. v Touche, [255 NY 170]; Glanzer v Shepard, [233 NY 236]). Such a requirement is necessary in order to provide fair and manageable bounds to what otherwise could prove to be limitless liability (see, Ossining Union Free School Dist. v Anderson LaRocca Anderson, supra, at 421).” (Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood, supra, at 382.) The courts in this State, however, have never extended liability for negligent misrepresentation to physicians who rely upon diagnoses made by their colleagues, and have never extended the duty of care that a physician owes a patient to another physician. Public policy militates against such a result, as modern medical practice requires that physicians, unlike other professionals, consult one another in performing diagnostic tests and other procedures concerning their patients’ health. A physician owes his or her patient the duty to exercise the requisite high degree of care, skill and diligence expected to be possessed and exercised by physicians specializing in their field. (Purdy v Public Adm’r of County of Westchester, 72 NY2d 1.) No such corresponding duty exists between or among physicians. The courts in this State have consistently rejected attempts to expand the scope of physicians’ duty of care to third *962 persons outside of the physician-patient relationship. (Purdy v Public Adm’r of County of Westchester, supra; Eiseman v State of New York, 70 NY2d 175, supra; Hecht v Kaplan, 221 AD2d 100; Adams v Elgart, 213 AD2d 436, supra; Ellis v Peter, 211 AD2d 353; Sorgente v Richmond Mem. Hosp., 142 Misc 2d 870.) This court now declines to extend a physician’s duty of care to encompass other physicians. If such a departure is to occur, it awaits the actions of appellate courts or the Legislature.
The court further finds that Dr. Megally’s claimed economic injuries were not caused by the defendants and, for that reason also, no basis for the imposition of liability exists. Dr. Megally claims that harm to his professional reputation and his economic losses occurred as a result of adverse publicity surrounding Mrs. Barbarito’s surgery. It is undisputed, however, that it was Mrs. and Mr. Barbarito who publicized the incident and not the defendants. Plaintiff therefore cannot establish that his injuries were caused by the defendants’ actions. Moreover, plaintiff is not entitled to assert a negligence claim against the defendants in order to insulate himself from the Barbaritos’ medical malpractice claim. Plaintiff’s remedy is to seek contribution in the malpractice action pursuant to CPLR article 14.
In view of the foregoing, defendants’ motions and cross motions to dismiss the complaint are granted.