*482
 
 OPINION OF THE COURT
 

 Wesley, J.
 

 This case requires us to examine, once again, the tripartite standard, set forth by this Court in
 
 Credit Alliance Corp. v Andersen & Co.
 
 (65 NY2d 536), for the functional equivalent of privity in a cause of action for negligent misrepresentation. We conclude, as did the Appellate Division, that plaintiff has not satisfied the test and his complaint must be dismissed.
 

 Harold Parrott was employed by Pasadena Capital Corporation, a privately held investment advisor firm located in California. Pursuant to a January 1992 stock purchase agreement, Parrott purchased over 40,000 shares of the company’s stock. The purchase agreement provided that, upon termination of Parrott’s employment, the company would buy back these shares at a fair market value determined on a minority basis by an independent third-party appraisal conducted in connection with the company’s employee stock ownership plan (ESOP). Coopers & Lybrand (C&L) had for several years been providing accounting services to Pasadena. Included among those services were valuation reports submitted twice annually that were used to determine the value of the stock for ESOP purposes. Each report was based on two methodologies: a discounted cash flow method, and a market comparable method relying on the stock values of similar companies publicly traded.
 

 Parrott was terminated in May 1996. In September 1996, Pasadena notified Parrott that it was exercising its right to repurchase the stock, and explained that it was relying on the $78.21 per share valuation established by C&L in its most recent report of June 30, 1996. After unsuccessfully requesting a preliminary injunction in a Federal action challenging the stock repurchase, Parrott entered into a stipulation with Pasadena providing for a repurchase price of $3.9 million without prejudice to seek a higher price in litigation. The Federal District Court ultimately directed that the dispute be arbitrated pursuant to the stock purchase agreement. A final arbitration award rejected C&L’s June 30, 1996 valuation of $78.21 per share and substituted an independent calculation of $122.50 per share. Pasadena paid Parrott the difference per share plus interest — nearly $2.5 million.
 

 Parrott commenced this action against C&L, asserting claims for professional negligence, negligent misrepresentation, and aiding and abetting his employer’s breach of fiduciary duty.
 
 *483
 
 Parrott argued that he reasonably relied on C&L’s misrepresentations and omissions when he stipulated to the sale of the shares. Supreme Court denied C&L’s motion for summary judgment and sanctions. The Appellate Division granted the motion for summary judgment, dismissing the complaint. While the Court unanimously concluded that Parrott’s cause of action for aiding and abetting a breach of fiduciary duty lacked merit — a conclusion not challenged on this appeal — it divided on the privity issue. The majority held that Parrott did not establish a relationship with C&L approaching privity and that C&L’s discharge of its contractual responsibilities was completely unrelated to any transaction under Parrott’s stock purchase agreement. The dissenter noted that Parrott had to rely on C&L’s valuation under the stock purchase agreement and that C&L must have been aware of this reliance given the small, identifiable class of employee stockholders. We now affirm.
 

 In a thoughtful opinion, the Appellate Division comprehensively charted the course of our jurisprudence in the third-party privity context. Thus, we begin our analysis, not with the history and development of the rule, but with our more recent cases.
 

 We have reiterated time and again that “before a party may recover in tort for pecuniary loss sustained as a result of another’s negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity”
 
 (Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood,
 
 80 NY2d 377, 382,
 
 rearg denied
 
 81 NY2d 955 [citing
 
 Ossining Union Free School Dist. v Anderson LaRocca Anderson,
 
 73 NY2d 417, 424;
 
 Credit Alliance Corp. v Andersen & Co.,
 
 65 NY2d 536,
 
 supra\; see also, State of California Pub. Employees’ Retirement Sys. v Shearman & Sterling,
 
 95 NY2d 427, 434). We have explained that our decision to circumscribe liability in this area by privity of contract or its equivalent rests on “concern for the indeterminate nature of the risk”
 
 (Ossining Union Free School Dist., supra,
 
 73 NY2d, at 424), and that “[s]uch a requirement is necessary in order to provide fair and manageable bounds to what otherwise could prove to be limitless liability”
 
 (Prudential Ins. Co., supra,
 
 80 NY2d, at 382). Although this rule first developed in the context of accountant liability, it has applied equally in cases involving other professions
 
 (see, e.g., Prudential Ins. Co.,
 
 80 NY2d 377,
 
 supra
 
 [lawyers];
 
 Ossining Union Free School Dist.,
 
 73 NY2d 417,
 
 supra
 
 [engineering consultants]).
 

 
 *484
 
 The Court has been cautious not to cast those who are called upon to make judgments under a contract of employment into liability to third parties absent a clearly defined set of circumstances which bespeak a close relationship premised on knowing reliance. Therefore, before liability may attach, the evidence must demonstrate “(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance”
 
 (Prudential Ins. Co., supra,
 
 80 NY2d, at 384 [citing
 
 Credit Alliance Corp., supra,
 
 65 NY2d, at 551]). These “indicia, while distinct, are interrelated and collectively require a third party claiming harm to demonstrate a relationship or bond with the once-removed accountants”
 
 (Security Pac. Bus. Credit v Peat Marwick Main & Co.,
 
 79 NY2d 695, 702-703,
 
 rearg denied
 
 80 NY2d 918).
 

 The evidence here is insufficient to establish a relationship so close as to approach that of privity. Parrott never met or communicated with C&L. C&L had been retained by Pasadena for several years to provide biannual valuations for Pasadena’s use with respect to ESOPs generally. There is no indication that C&L knew the reports would be used in connection with Parrott’s stock purchase agreement. C&L was not specifically made aware that Parrott owned company stock, or that the stock would be repurchased by the employer at a value fixed by the accounting firm. It is undisputed that there was no direct contact at any time between Parrott and C&L.
 

 Nor did Parrott rely on the valuation statements in C&L’s report. He never read or received defendant’s report; none had been provided to him. In fact, from the outset he rejected C&L’s valuation as inaccurate, noting that the estimated value should have been higher due to an anticipated sale of the company, and he successfully challenged it in an arbitration proceeding.
 

 Finally, no conduct directly linked Parrott and C&L that would evince an understanding by C&L of any reliance on Parrott’s part. Parrott relies on a single phrase appearing in a transmittal letter submitted by C&L in connection with the June 30, 1996 valuation which noted that the valuation was performed “for stock transactions involving employees of the Company.” However, as previously outlined, there is no indication that C&L knew of Parrott’s separate stock purchase agreement or that its valuations would be used to determine the repurchase price of shares pursuant to the termination provi
 
 *485
 
 sion of that agreement. Although Parrott may have been part of a limited and defined class of employees in this small closely held corporation, there is no evidence that C&L was informed that its valuation would be used for the purpose here
 
 (cf., White v Guarente,
 
 43 NY2d 356 [the nature and purpose of the accountant’s contract with the limited partnership made it clear that the accountant’s services were specifically obtained to benefit the members of the partnership who were necessarily dependent upon the defendant accounting firm’s audit to prepare their own tax returns]).
 

 Moreover, we have previously rejected a rule “permitting recovery by any ‘foreseeable’ plaintiff who relied on the negligently prepared report, and have rejected even a somewhat narrower rule that would permit recovery where the reliant party or class of parties was actually known or foreseen” but the individual defendant’s conduct did not link it to that third party
 
 (Ossining Union Free School Dist.,
 
 73 NY2d 417, 425,
 
 supra
 
 [citing
 
 Credit Alliance Corp.,
 
 65 NY2d 536, 553, n 11,
 
 supra]).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question not answered upon the ground that it is unnecessary.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick and Rosenblatt concur.
 

 Order affirmed, etc.