■ POINT O'WOODS ASSOCIATION, Plaintiff, v THOSE UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO CERTIFICATE No. 6771, Appellant, and HALL AGENCY OF BAYSHORE, INC., Doing Business as TERRY GIBSON & HALL, Respondent. [733 NYS2d 146] —Order, Supreme Court, New York County (Paula Omansky, J.), entered on or about July 11, 2000, which granted defendant insurance broker's motion for summary judgment dismissing defendant insurance carrier's cross claims for negligent misrepresentation and constructive fraud, and denied the carrier's cross motion for summary judgment on such cross claims, affirmed, without costs.

The subject cross claims, which are based upon omissions of prior losses made by the broker in preparing plaintiff insured's

application for excess flood insurance with the carrier, were properly dismissed for lack of evidence tending to show conduct by the broker linking it to the carrier in a manner creating a relationship between them approaching privity. To show the necessary linking conduct, the carrier relies on a phrase contained in a promotional flyer that the broker received from an entity described by the carrier as a "wholesale broker," and which identifies the carrier as the underwriter of the insurance being promoted. More is needed to show the functional equivalent of privity than that a reliant party was actually known (*see, Parrott v Coopers & Lybrand*, 95 NY2d 479, 485, citing *Ossining Union Free School Dist. v Anderson LaRocca Anderson*, 73 NY2d 417, 425, citing *Credit Alliance Corp. v Arthur Andersen & Co.*, 65 NY2d 536, 553, n 11; *see also, Security Pac. Bus. Credit v Peat Marwick Main & Co.*, 79 NY2d 695, 705). Nor does it appear that the carrier's alleged reliance on the broker's professionalism was justifiable, or that there is some other identifiable source of a special duty of care owed by the broker to the carrier (*see, Murphy v Kuhn*, 90 NY2d 266, 270-271, 273). Concur—Williams, J. P., Mazzarelli, Andrias and Ellerin, JJ.

Saxe, J., dissents in a memorandum as follows: This negligent misrepresentation claim arose after winter storms caused flooding that destroyed an oceanfront building on Fire Island owned by plaintiff Point O'Woods Association, whose members referred to the structure as the "Clubhouse." Plaintiff filed claims with both its primary flood insurance carrier, American Bankers Insurance Company, and its excess carrier, defendant Underwriters at Lloyd's, London (Lloyd's). In the course of its investigation of the claim, Lloyd's discovered that plaintiff's application for excess flood insurance had failed to mention two of the three flood damage insurance claims it had filed within the three years preceding the application. Lloyd's, accordingly, denied coverage on the ground of misrepresentation, because had these material facts been included in plaintiff's application for excess flood insurance, the underwriters would have declined the risk.

In addition to bringing an action against Lloyd's for breach of contract, plaintiff brought a claim against its insurance broker, Terry Gibson & Hall (TG&H), asserting that the omission in the application was the fault of TG&H. The application form had initially been completed by a TG&H customer representative, who then forwarded it to plaintiff for signature. Plaintiff's treasurer, John P. Bent, Jr., noticed that the question as to whether any other flood claims had been previously filed was

incorrectly answered "No." Bent alerted the broker, Robert Ferguson, to this error, and Ferguson responded that they would correct it after Bent signed the application and returned it to the agency. Bent crossed out the box marked "No," checked off the box marked "Yes," added the word "Clubhouse," then signed and dated the application and returned it to Ferguson. However, the customer service representative to whom Ferguson gave the application for the addition of information regarding prior losses failed to retrieve the complete flood loss history from her computer, and only noted one prior loss. She then forwarded the application to the insurer's agent.

In view of plaintiff's allegations against TG&H, Lloyd's interposed cross claims against TG&H, for negligent misrepresentation and constructive fraud.

Lloyd's material misrepresentation defense against Point O'Woods was dismissed, because although Insurance Law § 3105 permits an insurer to avoid a policy based upon even an innocent material omission, the policy itself limits this right of the insurer to instances of *willful* concealment or misrepresentation; where the policy is more favorable to the insured than the statute, the standard of proof required by the policy will be applied to the insurer seeking to avoid the policy (*see*, 2 Couch, Insurance 3d § 19:2, at 19-5). Therefore, the insurer could not avoid the policy unless the material omission was proved to have been intentional (*see, Kyong Nam Chang v General Acc. Ins. Co.*, 193 AD2d 521 [citations omitted]), which Lloyd's acknowledged that it was unable to prove.

Lloyd's underwriters on the policy were ultimately required to pay $1 million to cover plaintiff's claim on the policy, and now, pursuant to their cross claim, they seek to recoup that payment from the negligent broker.

There is no dispute between the parties concerning the applicable legal standard that applies to this controversy. The rule is, " 'before a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity' " (*see, Parrott v Coopers & Lybrand*, 95 NY2d 479, 483, quoting *Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood*, 80 NY2d 377, 382). Since privity of contract did not exist between Lloyd's and TG&H, a "relationship approaching privity" (*see, Securities Investor Protection Corp. v BDO Seidman*, 95 NY2d 702, 712) must exist for Lloyd's to succeed. The established test to determine whether such a relationship is present has been termed the "tripartite

test" by which the party seeking to recover must demonstrate " '(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance' " (*Parrott v Coopers & Lybrand, supra*, 95 NY2d, at 484).

Since TG&H knew the purpose of the application, and knew that Lloyd's underwriters would rely upon that information, the only disputed point here is the third requirement, that there had been conduct on the part of TG&H linking it to Lloyd's.

The majority holds that TG&H cannot be held liable to Lloyd's for its misrepresentations because it concludes that the proof merely shows that TG&H knew its statement was being relied upon by the third party, without any other "linking conduct."

However, the requisite linking conduct need not rise to the level of meetings and conversations. Indeed, it is not necessary that the plaintiff and the negligent third party have met or spoken at all. Rather, negligent misrepresentation claims against non-contracting parties have been upheld where the negligent party knew that the statement or report requested by its client is intended for the sole and particular use of, and at the direction of the plaintiff, and where the negligent party took *some* direct action toward the plaintiff, such as sending the statement or report directly to the plaintiff.

When the gamut of negligent misrepresentation cases is examined, it is apparent that in those where the claim has been dismissed due to an absence of linking conduct, the statement or report containing the misrepresentation was issued to the client for general purposes, such as an annual audit of a corporation's yearly financial reports by an accounting firm.

The classic case of *Ultramares Corp. v Touche* (255 NY 170) first explained that accountants could not be held liable to third parties who claimed to have relied upon a certified balance sheet the accountants had negligently prepared for the client, where the client was merely provided with multiple copies of the document, so that the client could exhibit the balance sheet as needed to unspecified "banks, creditors, stockholders, purchasers or sellers" (at 173-174).

Upon the basic premise established in *Ultramares* (*supra*), a negligent misrepresentation claim was dismissed in *Parrott v Coopers & Lybrand* (*supra*), in which a terminated employee whose company stock was to be repurchased by the company

at a value set in the company's most recent bi-annual valuation report, challenged the manner in which the employer's accounting firm, Coopers & Lybrand, arrived at the valuation (*see*, 95 NY2d 479, *supra*). The Court explained that the terminated employee could not maintain a negligent misrepresentation claim against Coopers & Lybrand because the accounting firm had no knowledge that the valuations contained in its bi-annual valuation report would be used in connection with the buy-out of Parrott's stock, and had no direct connection or contact with Parrott himself (*see*, 95 NY2d at 483, *supra*).

A negligent misrepresentation claim was similarly dismissed in *Security Pac. Bus. Credit v Peat Marwick Main & Co.* (79 NY2d 695), where a lender/bank alleged that a borrower's auditor had negligently prepared an audit report, upon which it had then relied in making the loan. The Court there noted that the purpose of the audit opinion provided to the client was not specifically to meet the bank's needs, and that the accounting firm had no reason to believe that the "end and aim" of the audit was to provide the plaintiff with the financial information it required (*id.* at 707). By the same token, in *Credit Alliance Corp. v Arthur Andersen & Co.* (65 NY2d 536), the Court explained that the defendant auditor was not retained for the particular purpose of inducing the plaintiff to extend the client credit, had no direct dealings with the plaintiff, and had not directed any words or action toward the plaintiff to establish the necessary link with it (*see also*, *Westpac Banking Corp. v Deschamps*, 66 NY2d 16, 19 [no allegation that the accountants had any dealings with the plaintiff, or had agreed with the client to prepare the report for plaintiff's use or according to plaintiff's requirement, or had agreed with the client to provide that plaintiff with a copy or actually done so]).

At the other side of the spectrum, claims of negligent misrepresentation have been upheld against non-contracting parties ever since the landmark case of *Glanzer v Shepard* (233 NY 236), in which it was held that public weighers hired by the sellers of beans to certify their weight could be held liable to the buyers who relied upon the weight certificates they issued.

At the far end of this spectrum lies the case of *European Am. Bank & Trust Co. v Strauhs & Kaye* (65 NY2d 536), where sufficient linking conduct was shown where the defendant accountant had multiple meetings and conversations with EAB while conducting its audit of its client. It should be noted, however, that it was not the occurrence of the direct meetings themselves

that was relied upon to uphold the claim; rather, the proof succeeded because it showed defendant's audit of its client to have been primarily, if not exclusively, "to provide [the plaintiff] with the financial information it required" (*see, European Am. Bank & Trust Co. v Strauhs & Kaye, supra,* at 554).

Under this basic theory, in *Ossining Union Free School Dist. v Anderson LaRocca Anderson* (73 NY2d 417), a school district was permitted to proceed with a negligent misrepresentation claim against engineering consultants although the engineers had been hired, not by the school district, but by an architectural firm conducting an evaluation of its buildings. The Court in *Ossining* emphasized that these engineers knew that their reports and opinions had been sought for the sole purpose of providing that information to the school district (*id.* at 425).

For the same reason, a real estate appraiser, asked by its client to provide the client with an appraisal for the use of particular potential lenders, may be liable to such lender if the appraisal is negligently prepared (*see, Rodin Props.-Shore Mall v Ullman,* 264 AD2d 367). Similarly, a lawyer who, at the direction of his client, provides a letter to a potential lender for the client assuring the lender that the client's mortgage documents represented " 'legal, valid and binding' " obligations which, once recorded, would be enforceable against the client " 'in accordance with [their] respective terms,' " may be said to have breached a duty owed to the lender if these assurances prove to be inaccurate (*Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood,* 80 NY2d 377, 385).

These cases establish that where the non-contracting defendant knows that the report or statement it is issuing at the behest of its client is for the use of a particular third party, and where the defendant itself forwards the report or statement directly to that third party, that conduct is enough to link the non-contracting defendant to the plaintiff. In such instances, neither direct meetings nor conversations are required.

Here, it is alleged that TG&H negligently misstated the number and extent of prior losses experienced by Point O'Woods, in an application directed at Lloyd's. These allegations do not merely show Lloyd's reliance upon the facts asserted in the application; they establish that TG&H knew its statement was going directly and solely to Lloyd's, specifically for Lloyd's consideration in determining whether to underwrite a policy. This is far more than a statement issued generally; it was made directly, to only one recipient. Accordingly, sufficient conduct linking TG&H to Lloyd's has been alleged to permit Lloyd's to proceed with its negligent misrepresentation claim against TG&H.

Nor does any valid public policy concern militate against permitting this particular negligent misrepresentation claim to proceed. In *Ultramares Corp. v Touche* (255 NY 170, *supra*), in an opinion by then Chief Judge Cardozo, the Court explained that, as a rule, an accountant should not be held liable to third parties for errors made in the course of a client's financial audit, because "a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class" (*see, id.* at 179). The claim in this case will not lead to the broad imposition of liability upon an unknowable and unending class of possible plaintiffs who might rely upon generally issued reports. The concerns applicable there do not apply where there is only one possible plaintiff for such a negligent misrepresentation: the insurer who relies upon it and who thereupon is wrongfully liable to pay the insured on a claim.

There is no reason why an insurance broker, although its contractual relationship is with the insured rather than the insurer, should be protected from the consequences of an erroneous statement it negligently included in an application it took upon itself to make and to submit to a particular insurer.

For the foregoing reasons, I would modify the order appealed from so as to deny summary judgment dismissing Lloyd's negligent misrepresentation cross claim against TG&H.