[868 NYS2d 189]

Castle Village Owners Corp., Plaintiff, v Greater New York Mutual Insurance Company et al., Defendants. (And a Third-Party Action.) Langan Engineering and Environmental Services, Inc., et al., Second Third-Party Plaintiffs-Respondents, v Mueser Rutledge Consulting Engineers, Second Third-Party Defendant-Appellant.

First Department, December 2, 2008

**APPEARANCES OF COUNSEL**

*Donovan Hatem, LLP*, New York City (*David M. Pollack, Allison B. Feld* and *James A. Cardenas* of counsel), for appellant.

*Sedgwick, Detert, Moran & Arnold, LLP*, New York City (*Jason D. Turken, Lawrence Klein, Scott D. Greenspan* and *Aaron F. Mandel* of counsel), for respondents.

## OPINION OF THE COURT

LIPPMAN, P.J.

On May 12, 2005, a 250-foot section of the retaining wall bordering the Castle Village co-op complex collapsed onto the Henry Hudson Parkway, causing a major artery providing access into and out of Manhattan to be shut down and inconveniencing thousands. Remarkably, although there was damage to parked vehicles, no one was injured or killed.

Plaintiff Castle Village commenced this action against, among others, Langan Engineering and Environmental Services, Inc. and Langan Engineering and Environmental Services, P.C. Langan had been providing engineering services for Castle Village, including monitoring and maintaining the retaining wall, from approximately 2002 until the collapse. Langan, in turn, brought this third-party action for contribution against Mueser Rutledge Consulting Engineers (MRCE), the engineers who had designed and implemented certain corrective measures for the stability of the retaining wall in 1985 when Castle Village was in the process of converting from a rental building to a co-op. The primary issue presented for review is whether the motion court properly denied MRCE's motion to dismiss under CPLR 3211 (h).

In 1985, WLS Associates, the owner of Castle Village and the sponsor of the conversion, submitted an offering plan to the New York State Department of Law. In connection with the proposed conversion, the tenants retained an engineer, John J. Flynn, P.E., to inspect the site. Flynn issued a report raising certain concerns about the condition of the property, including the structural integrity of the retaining wall. The report noted that there were signs of movement and instability in the wall and recommended that a separate structural analysis be conducted to determine the type of repairs that would be necessary.

Langan alleges that the Department of Law delayed the conversion because of the concerns raised by Flynn's report. The Department of Law then retained MRCE to study the condition of the retaining wall and to design and inspect the repairs. The sponsor agreed that it would accept MRCE's recommendations and fund the ensuing repair work. Langan asserts that the

sponsor pressured MRCE to generate a report quickly to allow the conversion process to move forward. MRCE inspected the site and issued a report recommending several repairs, including patching cracks with mortar and placing rock bolts into the wall, but opined that the wall was "in good condition" in light of its age and showed "no signs of instability." This report ultimately was included in the Castle Village offering plan.

MRCE subsequently provided the sponsor with drawings depicting proposed repairs to certain sections of the wall, including the section that later collapsed. One of the proposed measures was to insert eight rock anchors at least four feet into the bedrock behind the wall. The remediation, undertaken by a contractor subject to MRCE's supervision and inspection, began in June 1986. The co-op conversion took place in December 1986, while repairs were ongoing. MRCE monitored the progress of the work and completed its final inspection of the remediation in February 1987.

Langan asserts that, although MRCE supervised the remediation, none of its representatives actually observed the installation of the rock anchors or tested them once they were in place. Approximately 19 months after repairs were completed, MRCE provided Castle Village with a letter stating that it had inspected and accepted the remedial work. Shortly thereafter, MRCE also sent an amended inspection report to the New York City Department of Buildings certifying that it had inspected the work and that the work "conform[ed] to Code requirements." Langan alleges, however, that the rock anchors were too short for their intended purpose and did not penetrate into the bedrock behind the wall.

Castle Village retained Langan in 2002 to perform engineering services with respect to the wall and other portions of the property. Langan monitored the wall through a series of surveys and determined that some movement was occurring. In April of 2005, Castle Village again requested that Langan visit the property. At that time, Langan conducted additional surveys and concluded that the wall was moving more rapidly. In addition, there were visible cracks and sinkholes in the land above the retaining wall, which caused Langan to recommend immediate remedial action. Langan designed an emergency bracing system, but the wall collapsed before the system could be implemented.

Castle Village brought suit against Langan, among others, asserting claims for breach of contract and professional negligence. Langan commenced this third-party action against MRCE seek-

ing contribution. As is here relevant, MRCE moved to dismiss the third-party complaint pursuant to CPLR 3211 (h), which relief was denied on the ground that the complaint's allegations were sufficient to establish "a substantial basis in law" for Langan's claim. Supreme Court also found that MRCE owed a duty of care to Castle Village, since there was a relationship between them approaching privity, and that Langan's contribution claim was not barred by the economic loss doctrine.

As noted, MRCE's motion to dismiss was made under CPLR 3211 (h)—a provision that imposes a heightened standard of review. CPLR 3211 (h) applies to claims against a licensed architect, engineer, land surveyor or landscape architect for personal injury, wrongful death or property damage, when the professional's conduct occurs more than 10 years prior to the date of the claim. Under CPLR 3211 (h), the movant must demonstrate that the action is against a statutorily enumerated design professional and that it requires service of a notice of claim pursuant to CPLR 214-d (1).* To maintain the action, the party responding to the motion must then show that "a substantial basis in law exists to believe that the performance, conduct or omission complained of . . . was negligent and that such performance, conduct or omission was a proximate cause of personal injury, wrongful death or property damage complained of by the claimant" (CPLR 3211 [h]).

Sections 214-d, 3211 (h) and 3212 (i) were added to the CPLR in 1996 to ameliorate the effects of the existing law, which permitted a negligence action against a design professional to accrue three years after an injury, regardless of the amount of time intervening between the completion of the work and the injury (Senate Mem in Support of L 1996, ch 682, 1996 McKinney's Session Laws of NY, at 2614). The Senate memorandum in support of this legislation recognized that the pre-

---

* As is relevant here, CPLR 214-d (1) provides that:
"[a]ny person asserting a . . . third-party claim for contribution or indemnification arising out of an action for personal injury, wrongful death or property damage[ ] against a licensed architect, engineer, land surveyor or landscape architect . . . which is based upon the professional performance, conduct or omission by such licensed architect, engineer, land surveyor or landscape architect . . . occurring more than ten years prior to the date of such claim, shall give written notice of such claim . . . at least ninety days before the commencement of any action or proceeding . . . The notice of claim shall identify the performance, conduct or omissions complained of, on information and belief, and shall include a request for general and special damages."

1996 law tended to facilitate marginal claims against design professionals based on defects arising long after their work was completed and the improvements for which they were initially responsible had been in the owner's possession and subject to the owner's use and maintenance (*see id.*).

The "substantial basis" standard set forth in CPLR 3211 (h) constitutes a departure from the standard ordinarily applicable to the review of CPLR 3211 motions to dismiss for failure to state a cause of action. Rather than determine whether the allegations of the complaint when viewed most favorably to the plaintiff fall within any cognizable legal theory (*see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]), a court reviewing the sufficiency of a complaint under CPLR 3211 (h) must look beyond the face of the pleadings to determine whether the claim alleged is supported by "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (Senate Mem in Support at 2614). While under this standard a plaintiff need not demonstrate that the claim is supported by a preponderance of the evidence (*id.*, citing *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176 [1978]), "a fair inference to be drawn from the legislative history is that CPLR 3211 (h) was intended to heighten the court's scrutiny of the complaint and thereby make it easier to dismiss a CPLR 214-d action than other types of negligence actions" (Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 214-d, at 460).

The Senate memorandum's citation to *300 Gramatan Ave.* suggests that the "substantial basis" standard was intended to import the substantial evidence standard applicable in reviewing administrative determinations (*see* 45 NY2d at 180; Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 214-d, at 459). *300 Gramatan Ave.* explains the substantial evidence standard in some detail, indicating that it "consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably—probatively and logically" (45 NY2d at 181). However, more helpful, given the procedural posture of the present case, may be *300 Gramatan*'s "practical test"—whether the allegations and evidence presented would require submission to a jury as a question of fact (*see id.*).

■ Here, Langan satisfied the heightened requirements of CPLR 3211 (h). The complaint alleges with specificity and in

detail that MRCE departed from the professional standard of care and that its conduct was a proximate cause of Castle Village's injury. It alleges that MRCE failed to properly design the structural repairs, failed to properly inspect and supervise the contractor's repair work, and then failed to test the rock anchors once they were installed. More specifically, Langan asserts that the rock anchors were too short for their designed purpose and did not provide stabilization for the wall.

These allegations were supported by the affidavit of Langan's expert, Francis D. Leathers, P.E., a registered professional engineer. Leathers also opined that MRCE failed to meet the standard of care in its initial assessment of the wall because it relied solely on visual evidence of deterioration instead of performing tests, such as borings or probes. He further asserted that the wall was not as stable as it would have been if the rock anchors had been properly designed and placed, that the collapse happened sooner than it would have if the rock anchors had been designed and installed properly, and that, with proper design and installation, the rock anchors would have afforded Langan more time to complete the emergency stabilization measures in progress at the time of the collapse. Leathers found MRCE's actions "a substantial contributing factor to the May 12, 2005 collapse of the retaining wall."

The allegations of the complaint and the expert affidavit provide a "substantial basis" to believe that MRCE was negligent in the performance of its professional design duties and that the negligence was a proximate cause of the damage. Thus, Langan demonstrated that its claim has sufficient merit to allow it to proceed, and the court properly denied MRCE's motion to dismiss.

In opposition to Leathers's opinion, MRCE submitted the affidavit of its own engineering expert, Thomas D. O'Rourke, Ph.D. O'Rourke found that MRCE met the standard of care expected of professional engineers when it initially assessed the condition of the retaining wall and when it performed services relating to the repair in 1985-1987. He stated that Langan had sufficient time between 2002 and 2005 to take corrective action to prevent the collapse. O'Rourke also opined "that MRCE did not contribute substantially, or in any other way, to the failure of the Castle Village retaining wall." While O'Rourke's affidavit disputes Leathers's conclusions, it does not warrant dismissal of the action. It simply raises issues of fact that are not suitable for determination at this stage of the litigation.

■ MRCE asserts that Langan is not entitled to contribution because MRCE did not owe a duty of care to Castle Village and because Langan's negligence cause of action is essentially a breach of contract claim. However, the evidence that MRCE knew when it undertook the work on the retaining wall that the work was critical to the approval of the conversion plan, continued to inspect the site after Castle Village was the owner, and that MRCE's report was included in the offering plan, demonstrates a direct relationship between MRCE and Castle Village that approached privity and supports the finding that MRCE owed Castle Village a duty of care (*see Samuels v Fradkoff*, 38 AD3d 208 [2007]). In other words, Castle Village was an intended beneficiary of the contract between MRCE and the sponsor (*see Board of Mgrs. of Astor Terrace Condominium v Schuman, Lichtenstein, Claman & Efron*, 183 AD2d 488, 489 [1992]).

Nor is Langan's contribution claim barred by the economic loss doctrine, since, as a design professional, MRCE "may be subject to tort liability for failure to exercise reasonable care, irrespective of [its] contractual duties" (*Sommer v Federal Signal Corp.*, 79 NY2d 540, 551 [1992]), and the damages sought by Langan are not limited to the benefit of the bargain (*see Tower Bldg. Restoration v 20 E. 9th St. Apt. Corp.*, 295 AD2d 229, 229 [2002]).

In view of the foregoing, we need not address the parties' contentions regarding the admissibility of the investigative reports.

Accordingly, the order of the Supreme Court, New York County (Helen E. Freedman, J.), entered February 15, 2008, which, insofar as appealed from, denied the motion of second third-party defendant Mueser Rutledge Consulting Engineers to dismiss the second third-party complaint in its entirety, should be affirmed, with costs.

ANDRIAS, SAXE, SWEENY and DEGRASSE, JJ., concur.

Order, Supreme Court, New York County, entered February 15, 2008, affirmed, with costs.