[884 NYS2d 745]

JAMES SYKES et al., Respondents, v RFD THIRD AVENUE 1 AS-
SOCIATES, LLC, et al., Defendants, and COSENTINI ASSOCI-
ATES, LLP, Appellant.

First Department, September 8, 2009

APPEARANCES OF COUNSEL

*Wilson, Elser, Moskowitz, Edelman & Dicker*, New York City (*Richard E. Lerner* of counsel), for appellant.

*Adam Leitman Bailey, P.C.*, New York City (*John M. Desiderio* and *Jessica D. Scherer* of counsel), for respondents.

## OPINION OF THE COURT

MOSKOWITZ, J.

The only issue on this appeal is whether plaintiffs have stated a claim for negligent misrepresentation. We hold they have not, because they have failed to allege a relationship between themselves and this defendant, the mechanical engineer for the building where plaintiffs purchased an apartment, that is close enough to approach privity. In particular, plaintiffs have failed to allege that they were known to defendant at the time of the alleged misrepresentation and have failed to allege some conduct on the part of defendant linking it to plaintiffs. Therefore, we reverse the order of the motion court.

RFD Third Avenue 1 Associates, LLC (sponsor) retained defendant Cosentini Associates, LLP (Cosentini or defendant) in an Engineering Services Agreement, dated October 6, 1997, to prepare certain designs for the construction phase of the Empire Condominium in Manhattan. Under the agreement, Cosentini's responsibilities included the mechanical design of the heating, ventilation and air conditioning (HVAC) systems. In addition, the agreement provided that Cosentini would sign off on the work performed and issue certifications that regulatory authorities required. However, defendant did not install or oversee the installation of the HVAC units. Nor did defendant prepare the condominium offering plan or the documents the offering plan contained. However, defendant admits that it provided the sponsor with information regarding the mechanical systems for the building for use in the offering plan. The offering plan appears to be dated April 27, 1999. Presumably, sometime before that point, defendant supplied the information for use in the offering plan. Cosentini claims it completed all its work on or about May 21, 2001 and did not perform additional work after that.

In July 2000, plaintiffs James and Ellen Sykes entered into a contract to purchase a penthouse apartment from the sponsor.

The closing took place on March 13, 2001. Plaintiffs moved into the apartment in April 2001.

According to the complaint before the court, problems with the apartment became evident shortly after plaintiffs took occupancy. This included problems with the HVAC system. Plaintiffs were unable to maintain a comfortable temperature in the apartment in winter or summer regardless of the thermostat setting.

After their situation went unresolved, plaintiffs filed a seven-count complaint in September 2004 against Cosentini and other defendants, including the sponsor. The only claim plaintiffs asserted against Cosentini was for "common Law Fraud and misrepresentation."

In December 2004, Cosentini moved to dismiss that complaint for failure to state a cause of action for fraud or negligent misrepresentation. The court granted Cosentini's motion, dismissing the complaint as to Cosentini without prejudice because plaintiffs' allegations were conclusory and failed to allege that Cosentini was in privity of contract with them or in "a relationship so close as to approach that of privity."

In March 2006, plaintiffs filed a separate action against Cosentini, alleging breach of contract (based on the theory that plaintiffs were intended beneficiaries under the Engineering Services Agreement), professional malpractice and "Common Law Fraud and/or Negligent Misrepresentation." Their cause of action for negligent misrepresentation, although combined with their fraud claim, relied only upon the offering plan and related marketing materials. Plaintiffs alleged that the offering plan and marketing documents promised "[f]unctioning heating, ventilation and air conditioning systems meeting applicable governmental requirements for comfort and efficiency." Plaintiffs claim that, contrary to the representations in the offering plan, the HVAC system did not meet applicable governmental requirements and that they were unable to maintain a comfortable temperature in the apartment. Plaintiffs also point out that the offering plan identified defendant as the mechanical engineer for the construction phase of the building and touted defendant's services to other buildings in Manhattan. Plaintiffs claim that "prospective purchasers (including [plaintiffs]) were expected to and would rely upon Cosentini's reputation and expertise, as summarized in the Offering Plan." Defendant has admitted that "[a]s the mechanical engineer for the project, Cosentini provided a description of the mechanical

systems to the architect and RFD for use in the offering plan." Cosentini had no involvement in the preparation or distribution of the offering plan, certifications or marketing materials. It is undisputed that Cosentini never communicated or interacted with plaintiffs prior to their purchase of the apartment.

Defendant moved to dismiss the entire complaint as against it. The motion court deemed plaintiffs' cause of action for breach of contract to be a claim for professional malpractice and then dismissed professional malpractice as time-barred (2007 NY Slip Op 34431[U]). The court dismissed the fraud claim as conclusory. However, the court did not dismiss that part of plaintiffs' third cause of action for negligent misrepresentation. Only defendant appealed. Plaintiffs did not appeal the dismissal of their breach of contract and professional malpractice claims.

Plaintiffs' negligent misrepresentation claim fails to allege a "special relationship," i.e., "a relationship so close as to approach that of privity" (*Parrott v Coopers & Lybrand*, 95 NY2d 479, 483 [2000]). The New York Court of Appeals takes a rather cautious approach to determining whether a relationship necessary to support a claim for negligent misrepresentation exists (*see Ossining Union Free School Dist. v Anderson LaRocca Anderson*, 73 NY2d 417, 424 [1989] ["(w)e have defined this duty narrowly, more narrowly than other jurisdictions"]). This narrow approach developed out of concern for the "limitless liability" that could result that otherwise would stop with the contracting parties (*Parrott* at 483, citing *Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood*, 80 NY2d 377, 382 [1992]; *see also Credit Alliance Corp. v Arthur Andersen & Co.*, 65 NY2d 536, 553 [1985] [explicitly rejecting a rule "permitting recovery by any foreseeable plaintiff"]; *Ossining*, 73 NY2d at 421 ["(i)n negligent misrepresentation cases especially, what is objectively foreseeable injury may be vast and unbounded, wholly disproportionate to a defendant's undertaking or wrongdoing"]).

Therefore, before a stranger to a contract can claim harm from negligent misrepresentation, there must be:

> "(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance" (*Parrott*, 95 NY2d at 484 [citations omit-

ted]; *see also Securities Inv. Protection Corp. v BDO Seidman*, 95 NY2d 702, 712 [2001] [no privity between Securities Investor Protection Corporation (SIPC) and accountants where accountants had not prepared audit reports for the specific benefit of SIPC, did not send them to SIPC and SIPC never read these reports]).

Accordingly, we have been circumspect when assessing privity (*see e.g. Houbigant, Inc. v Deloitte & Touche*, 303 AD2d 92, 95 [2003] [accountant's audit "was a task performed pursuant to professional standards applicable in the context of any audit, and was not undertaken pursuant to any duty owed toward (plaintiff)"]; *LaSalle Natl. Bank v Ernst & Young*, 285 AD2d 101, 107-108 [2001] [no privity between lender and borrower's accountants where only contact was single phone call]; *see also Israel Discount Bank of N.Y. v Miller, Ellin & Co.*, 277 AD2d 58, 59 [2000]).

"Although this rule first developed in the context of accountant liability, it has applied equally in cases involving other professions" (*Parrott*, 95 NY2d at 483; *see also Ossining* at 424 ["(n)or does the rule apply only to accountants"]). This Court too has extended the privity requirements of *Parrott* beyond the accountant arena (*see e.g. Bri-Den Constr. Co., Inc. v Kapell & Kostow Architects, P.C.*, 56 AD3d 355 [2008], *lv denied* 12 NY3d 703 [2009] [no privity between architect and bidder]; *Point O'Woods Assn. v Those Underwriters at Lloyd's, London Subscribing to Certificate No. 6771*, 288 AD2d 78, 79 [2001], *lv denied* 98 NY2d 611 [2002] [no privity between insurance carrier and broker]).

Notably, plaintiffs do not argue on this appeal that the Engineering Services Agreement between defendant and RFD demonstrates defendant knew potential tenants would rely on the information defendant provided. Rather, to support their argument that privity exists, plaintiffs point to allegations that rely solely on the offering plan. Plaintiffs' entire argument rests on the theory that: (1) because defendant supplied information about certain mechanics of the building, including the HVAC system, to the sponsor and the architect for use in the offering plan; and (2) because the offering plan mentions defendant as the mechanical engineering firm retained to prepare mechanical designs for the building, this somehow leaves defendant open to liability for negligent misrepresentation.

The alleged relationship between plaintiffs and this defendant is too attenuated to support a relationship approaching privity.

As we explained earlier, a relationship approaching privity requires that: (1) defendant have an awareness that his or her statement is for a particular purpose; (2) a known party relies on the statement in furtherance of that purpose; and (3) there is some conduct linking defendant to the relying party and evincing its understanding of that reliance. While arguably the allegations in the complaint satisfy the first prong, plaintiffs have not made allegations sufficient to satisfy the other requirements.

The second prong requires reliance by a "known party." Plaintiffs completely failed to allege plaintiffs were "known" to defendant at the time of the alleged misrepresentation. Indeed, at the time it submitted information to the sponsor about the HVAC systems for use in the offering plan (sometime prior to April 27, 1999), defendant would only have been aware in the most general way that some buyer would rely on that information to purchase a particular unit. This is clearly insufficient (*see Bri-Den Constr. Co.*, 56 AD3d at 355 ["prequalified bidders were simply not 'known' at the time of the complained-of conduct"]; *Ford v Sivilli*, 2 AD3d 773, 774-775 [2d Dept 2003] [in case alleging negligent misrepresentation for submitting incorrect plans to town, plaintiff real estate purchasers could not sue architect and expediter, that *sellers* had hired, because "(a)t best, the plaintiffs were part of an 'indeterminate class of persons who, presently, or in the future' may rely upon (the architect's and expediter's) alleged misrepresentations, which are not the equivalent of known parties"]; *see also Credit Alliance Corp.*, 65 NY2d at 553 n 11 [rejecting rule that defendant, without more, could be liable to class of foreseeable plaintiffs]; *Westpac Banking Corp. v Deschamps*, 66 NY2d 16, 19 [1985] [although defendant may have known that the financial statements it prepared were for the particular purpose of obtaining a bridge loan, the complaint failed to state a relationship approaching privity where it did not claim that defendant knew that client was showing its reports to plaintiff, rather than a class of "potential bridge lenders"]).

Even if plaintiffs were a "known party," the complaint remains insufficient because plaintiffs have failed to allege linking conduct. Plaintiffs have not alleged, or even argued, that anything in the Engineering Services Agreement provides the necessary link to defendant. Plaintiffs do not allege that defendant had agreed to provide plaintiffs directly with information or point to any direct contact between the parties whatsoever

(*see Westpac*, 66 NY2d at 19 [no privity where there were no allegations that defendant had any dealings with plaintiff, had specifically agreed to prepare report for plaintiff's use or had even agreed to provide plaintiff with a copy]; *compare Ossining*, 73 NY2d at 425-426 [finding privity where "defendants allegedly undertook their work in the knowledge that it was for (plaintiff) alone" and had "various types of contact directly with (plaintiff)"]).

The dissent claims that the complaint is sufficient because: (1) Cosentini conceded that it provided a description of the HVAC system for use in the offering plan; and (2) the offering plan, "based upon representations clearly made by Cosentini to the sponsor," states particulars about the HVAC system, including that the system "will be designed to maintain a temperature of 72 [degrees] F." This argument would be more persuasive if the *complaint* actually said what the dissent has written. It doesn't. We must judge the complaint as plaintiffs have drafted it, not as the dissent would draft it for them. Nor does the complaint delineate what conduct links defendant to plaintiffs. As stated earlier, it is not enough that future purchasers were expected to rely on the offering plan (*see Bri-Den Constr. Co.*, 56 AD3d at 355).

The cases plaintiffs cite, *Board of Mgrs. of Alfred Condominium v Carol Mgt.* (214 AD2d 380 [1995], *lv dismissed* 87 NY2d 942 [1996]) and *Board of Mgrs. of Astor Terrace Condominium v Schuman, Lichtenstein, Claman & Efron* (183 AD2d 488 [1992]), both of which predate *Parrott*, are inapposite because in those cases the plaintiff unit owners were intended third-party beneficiaries of the contract between the sponsor and the engineers or design professionals. On this appeal, plaintiffs point to no language indicating that the sponsor and defendant agreed to confer third-party beneficiary status on plaintiffs or that the sponsor intended that result. The dissent argues that this is an irrelevant distinction because plaintiffs are not asserting breach of contract. This position overlooks negligent misrepresentation's "known party" requirement that third-party beneficiary status might satisfy. However, plaintiffs have not argued that third-party beneficiary status makes them a known party to defendant and we decline to make that argument for them.

We reject the dissent's admonishment that we must follow *Astor*'s holding on negligent misrepresentation just because it is the law of this Court. *Astor* is in direct conflict with Court of

Appeals precedent from *Credit Alliance* through *Parrott*. Indeed, the Court of Appeals has indirectly rejected *Astor*'s holding, at least concerning privity as it relates to negligent misrepresentation. The Court of Appeals in *Parrott* affirmed a majority decision of this Court (*see* 263 AD2d 316 [2000]). The majority granted summary judgment to defendant accounting firm primarily because there was no evidence of conduct linking the plaintiff to the accountants. This dismissal occurred in the face of a lengthy dissent that relied heavily upon *Astor*. Thus, it is questionable whether *Astor* is good law on this issue. Moreover, to follow *Astor* in the face of Court of Appeals precedent like *Parrott* creates special protection for accountants when the Court of Appeals has dictated that the rule applies equally to other professions (*see Ossining*, 73 NY2d at 424).

The dissent assumes that because this Court cited *Astor* in *Castle Vil. Owners Corp. v Greater N.Y. Mut. Ins. Co.* (58 AD3d 178 [2008]), *Astor* remains good law to support plaintiffs' claim for negligent misrepresentation. This assumption is misplaced. *Castle Village* cited *Astor* only for its discussion of third-party beneficiary status, a completely different point. Again, plaintiffs here do not argue on appeal that they are intended beneficiaries under defendant's contract with the sponsor.*

Moreover, *Castle Village* is so different from this case that its reliance on *Astor* says very little. The claim in *Castle Village* was for professional malpractice, rather than negligent misrepresentation, and involved the issue of whether the defendant could recover in contribution from another defendant in a third-party action. In that case, the engineer knew its work was critical to approval of a conversion plan, the engineer's report was included in the offering plan, the engineer continued to inspect the site after Castle Village became the owner and Castle Village was an intended beneficiary of the contract between the engineer and the sponsor.

In contrast, here, none of these circumstances are present. Plaintiffs' claim is for negligent misrepresentation and relies solely on defendant's supplying information to the sponsor or

---

* Indeed, the dissent fails to distinguish *Bri-Den Constr. Co.*, a far more recent case than *Astor*, in which this Court upheld the dismissal of a complaint against a construction project's architect because plaintiff was not a known party at the time of the misconduct, and otherwise fails to explain how plaintiffs were "known parties" rather than a class of potential parties within the parameters of New York law as the Court of Appeals has articulated it for us.

architect for use in the offering plan. Plaintiffs do not even argue on appeal that they are intended beneficiaries under defendant's contract with the sponsor. The offering plan did not include a report from defendant. Defendants supplied information for use in the offering plan, dated April 27, 1999, well before plaintiffs signed a contract in July 2000 and became owners on March 13, 2001.

In addition, the dissent's heavy reliance on *Ossining* is misplaced. In *Ossining*, as the dissent notes, there was direct contact between the plaintiff and the defendants. The Court of Appeals emphasized this factor to hold that plaintiff had stated a claim for negligent misrepresentation. Here, there are no allegations of direct contact. Therefore it is difficult to discern how *Ossining* supports the dissent's position.

The dissent appears to endorse the approach set forth in section 552 of the Restatement (Second) of Torts. That section extends the liability of professionals who supply information for the guidance of others to loss a class of generally intended recipients might suffer where the professional is aware there is a possibility those recipients might rely on his or her work. However, the Court of Appeals has expressly rejected this approach (*see Credit Alliance Corp.*, 65 NY2d at 553 n 11; *Westpac Banking Corp.*, 66 NY2d at 19). The law the Court of Appeals has articulated for the State of New York is far more circumscribed. That is the law we must follow and thus, plaintiffs' claim for negligent misrepresentation against defendant Cosentini does not survive.

Accordingly, the order of the Supreme Court, New York County (Richard F. Braun, J.), entered October 9, 2007, that, insofar as appealed from as limited by the brief, denied defendant Cosentini Associates, LLP's motion to dismiss the negligent misrepresentation claim, should be reversed, on the law, with costs, the motion granted and the cause of action for negligent misrepresentation dismissed.

ANDRIAS, J. (dissenting). Because of the majority's misplaced reliance upon *Parrott v Coopers & Lybrand* (95 NY2d 479, 483 [2000]), a case not cited by either party, in order to justify its reversal in this case and its rejection of our decision in *Board of Mgrs. of Astor Terrace Condominium v Schuman, Lichtenstein, Claman & Efron* (183 AD2d 488, 489 [1992]), which it erroneously claims "is in direct conflict with Court of Appeals precedent," namely *Parrott*, I dissent and would affirm the denial of

defendant Cosentini Associates's motion to dismiss the negligent misrepresentation claim against it.

In this appeal in which the only remaining issue is a cause of action brought by the purchasers of a $4 million condominium penthouse atop the Empire Condominium on East 78th Street against Cosentini Associates, the mechanical engineering firm that designed the HVAC systems for the building, we all agree that plaintiffs' negligent representation claim is not duplicative of their professional malpractice claim (*see Sage Realty Corp. v Proskauer Rose*, 251 AD2d 35, 39 [1998]), and therefore is not barred by the statute of limitations applicable to professional malpractice claims. We differ, however, as to whether that cause of action can withstand Cosentini's motion to dismiss pursuant to CPLR 3211 (a) (7) for failure to state a cause of action.

In order to state a cause of action for negligent misrepresentation, plaintiffs must allege awareness by Cosentini that the allegedly negligent misrepresentations were to be used for a particular purpose, reliance by a known party or parties in furtherance of that purpose and some conduct by Cosentini linking it to the party or parties and evincing its understanding of their reliance (*Ossining Union Free School Dist. v Anderson LaRocca Anderson*, 73 NY2d 417, 425 [1989], citing *Credit Alliance Corp. v Arthur Andersen & Co.*, 65 NY2d 536, 551 [1985]).

For present purposes, the facts asserted in plaintiffs' submissions in opposition to Cosentini's motion satisfy those prerequisites. Plaintiffs' allegations of a "special relationship" with Cosentini, i.e., "a relationship so close as to approach that of privity," are sufficient to state a cause of action for negligent misrepresentation (*Board of Mgrs. of Astor Terrace Condominium v Schuman, Lichtenstein, Claman & Efron*, 183 AD2d 488, 489 [1992] [internal quotation marks and citation omitted]). Cosentini admittedly provided the sponsor of the building in which plaintiffs purchased an apartment with descriptions of the heating, ventilation and air conditioning systems for use in the offering plan. Plaintiffs allege that Cosentini knew the representations in the offering plan would be relied on by purchasers such as they, that they purchased the apartment pursuant to the offering plan, and that they relied on those representations in deciding to purchase the apartment.

The majority finds the complaint insufficient because plaintiffs have failed to allege reliance by a known party on Cosentini's alleged misrepresentations or conduct on the part of Cosentini linking it to the relying party. However, in support of

its motion to dismiss, Cosentini concedes that it provided a description of the building's mechanical systems, specifically the heating and air conditioning systems, to the building's architect and sponsor "for use in the Offering Plan." That offering plan, based upon representations clearly made by Cosentini to the sponsor, states, in pertinent part, that "the heating system will be designed to maintain a temperature of 72 [degrees] F inside when the outside temperature is +15 [degrees] F" and "[t]he apartments will be provided with individual water source heat pump units in each room, capable of maintaining inside conditions of 78 [degrees] F and 60% humidity when outside temperatures are 89 [degrees] F.F.W.B."

The motion court found that paragraphs 81-98 of the amended complaint state a cause of action for negligent misrepresentation (2007 NY Slip Op 34431[U]). Those paragraphs allege, in pertinent part, that the sponsor and Cosentini through "reckless and/or negligent" oversight made specific representations in the offering plan, certification and related marketing materials concerning the "adequacy of the heating and air conditioning systems"; that Cosentini intended that those representations be relied on by purchasers of units in the building such as plaintiffs; that plaintiffs relied on representations, made either directly or indirectly to them, that the construction work had been done in a good and workmanlike manner in conformance with the plans as filed; and that plaintiffs relied upon the false and misleading representations in spending more than $4 million to purchase their unit.

In addition, the complaint alleges that both the sponsor and Cosentini understood that prospective purchasers such as plaintiffs were expected to and would rely upon Cosentini's reputation and expertise as summarized in the offering plan, etc.; that plaintiffs relied upon the offering plan and marketing materials; that based on such reliance they bought their penthouse unit; that the selling agent represented that the contractors and workers "were of the best quality"; that the HVAC system was improperly sized and plaintiffs were unable to maintain temperatures in their unit as specified in the offering plan; and that plaintiffs were justified in their reliance on the representations that Cosentini would perform its work in a good and workmanlike manner.

Plaintiffs also argued in opposition to Cosentini's motion that Cosentini entered into its contract with the sponsor with full knowledge that its HVAC design would be used in a luxury

high-rise building for condominiums that would be sold to people like plaintiffs; that it admitted that it provided descriptions of the HVAC system to be used in the offering plan; and that the offering plan was incorporated by reference in plaintiffs' purchase agreement.

The majority's attempt to distinguish *Astor Terrace* is unpersuasive. Like the offering plan in *Astor Terrace*, which claimed that the architects and engineers in that case were the "best," the offering plan in this case, in addition to touting its architect as "the architect of many of Manhattan's most famous buildings [naming the Knickerbocker condominium on East 72nd Street, the Siena condominium on East 76th Street, and Metropolitan Tower on West 57th Street]", describes Cosentini as having provided mechanical engineering for the ATT World Headquarters on 57th Street and Madison Avenue, and the Lever House at 390 Park Avenue. The offering plan also states that the plans and specifications had been prepared by such architects and engineers and that construction of the building, "including the individual Units and Common Elements," would be completed substantially in accordance with such plans and specifications.

Moreover, any reliance by the majority upon *Parrott* for a reversal in this case and its claim that *Parrott* indirectly rejected our decision in *Astor Terrace*, which they claim "is in direct conflict with Court of Appeals precedent," is sadly misplaced. Significantly, as the Court stated in *Parrott*, it was not making new law, but merely reiterating what it had previously held time and time again, that is, in order to recover for pecuniary loss caused by negligent misrepresentation "there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity" (95 NY2d at 483, quoting *Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood*, 80 NY2d 377, 382 [1992] [which cited *Ossining Union Free School District* (73 NY2d at 424) and *Credit Alliance Corp.* (65 NY2d 536 [1985]), the same two cases cited by this Court in *Astor Terrace*]).

In *Astor Terrace*, this Court held that " 'recovery may be had for pecuniary loss arising from negligent representations where there is actual privity of contract between the parties *or a relationship* so close as to approach that of privity' (*Ossining Union Free School Dist.*[, 73 NY2d at 424])" (183 AD2d at 489 [emphasis added]). We held that "[l]iability in a relationship approaching privity depends on a showing that the defendants

were aware that reports were to be used for a particular purpose, reliance by known parties in furtherance of that purpose, and some conduct by the defendants linking them to those parties and evincing an understanding of their reliance" (*id.*, citing *Credit Alliance Corp.*, 65 NY2d at 551).

The plaintiff in *Astor Terrace* "met these criteria by showing that the design and engineering defendants *must have been aware* that the substance of their reports would be distributed to and relied upon by prospective purchasers, that such reliance did occur, and that the conduct of such defendants sufficiently linked them to plaintiff and evinced their understanding of the unit purchasers' reliance" (*id.*). "Of particular importance," this Court found, was "the fact that the units were marketed as luxury condominiums with an emphasis on the fact that the sponsor had gathered the best engineers and architects to design and construct the building and provide for its amenities" (*id.* at 489-490).

The majority claims that *Ossining Union Free School District* is somehow distinguishable because in that case there was "direct contact" between the plaintiff and the defendants and the Court of Appeals emphasized that factor in holding that plaintiff had stated a claim for negligent misrepresentation. However, there is nothing in the Court's opinion that indicates that "direct contact" was "emphasized" or weighed heavily in that holding. Direct contact was just one of several factors the Court considered in determining that the plaintiff had sufficiently alleged that "defendants were aware—indeed, could not possibly have failed to be aware—that the substance of the reports they furnished would be transmitted to and relied upon by" the plaintiff (*Ossining Union Free School Dist.*, 73 NY2d at 425).

That litigation arose from certain reports made by several engineers following tests done to determine the structural soundness of a high school annex. The school district had retained an engineering consultant which in turn hired two engineering firms to conduct the tests. Both engineers reported serious weaknesses in the concrete slabs that formed the building's superstructure and the consultant informed the school district of those findings. After arranging for the use of other facilities at substantial expense, the school district hired a third independent expert who advised it that the previous conclusions of structural problems were based on faulty assumptions as to the type of concrete used. The school district

then sued the two engineers for negligence and malpractice, alleging that the two engineers knew that the school district would rely upon their reports in order to determine what measures should be taken to deal with the structural "problems." The two engineers' CPLR 3211 motion to dismiss the complaint was granted and the Second Department affirmed, citing the "long-standing rule that recovery will not be granted to a third person for pecuniary loss arising from the negligent representations of a professional with whom he or she has had no contractual relationship" (*id.* at 421).

In reversing and reinstating the cause of action for negligent misrepresentation, a unanimous Court of Appeals (per Kaye, J.) recited the history of the courts' long struggle to define the ambit of duty or limits of liability for negligence, which in theory could be endless, the rhetoric of which was couched in the concept of foreseeability. Since, in negligent misrepresentation cases, what is objectively foreseeable injury may be vast and unbounded and wholly disproportionate to a defendant's undertaking or wrongdoing, courts, in reaching the policy judgment called "duty," have invoked a concept of privity of contract as a means of fixing fair, manageable bounds of liability (*id.*). The Court then traced the history of the concept through *Ultramares Corp. v Touche* (255 NY 170 [1931, Cardozo, Ch. J.]) and up to *Credit Alliance Corp.*, in which the Court (per Jasen, J.) first spelled out the three-pronged criteria for liability.

As previously noted, the Court found that the school district had satisfied those prerequisites by alleging "that through direct contact with defendants, information transmitted by Anderson [the consultant], and the nature of the work, defendants were aware—indeed, could not possibly have failed to be aware—that the substance of the reports they furnished would be transmitted to and relied on by the school district . . . in [the] ongoing project" (*id.* at 425). The Court concluded that "[n]ot unlike the bean weighers in *Glanzer [v Shepard*, 233 NY 236 (1922)], defendants allegedly rendered their reports with the objective of thereby shaping this plaintiff's conduct, and thus they owed a duty of diligence established in our law at least since *Glanzer* not only to Anderson [the consultant] who ordered but also to the school district who relied" (*id.* at 426).

Clearly, as the Court of Appeals found in *Ossining Union Free School District* and as we found in an identical situation in *Astor Terrace*, Cosentini, as evidenced by its concession that its descriptions of the HVAC systems it designed for the Empire

Condominium were to be used in the sponsor's offering statement, "must have been aware that the substance of [its information] would be distributed to and relied upon by prospective purchasers" (183 AD2d at 489). As we further stated: "[a]s design and construction failures affect a condominium unit owner's standards of living and ability to sell, '[i]t cannot be heard that these condominium owners . . . were merely an incidental rather than an intended beneficiary of the contracts' " (*id.* [citation omitted]). In other words, if plaintiffs, as prospective purchasers of a condominium unit that was not yet completed, were not expected or intended to rely upon Cosentini's representations regarding the heating, ventilation and air conditioning systems, which concededly were provided to the building's sponsor for use in the offering plan, who was?

Obviously, since we are only at the pleading stage, discovery will or will not flesh out the allegations in the complaint; however, based upon the controlling case law and the specific allegations in the complaint, it cannot be said as a matter of law that plaintiffs have not sufficiently pleaded a cause of action for negligent misrepresentation.

To the extent that the majority feels that *Parrott* has indirectly rejected our holding in *Astor Terrace*, such conclusion is unpersuasive. *Parrott* involved a dispute over the fair market value of shares in a small privately held corporation. This Court dismissed a negligence claim brought by a former director, vice-president and minority shareholder against an accounting firm retained by the corporation to periodically value the company on a minority interest basis in connection with the sale or proposed sale of the corporation. At the time that plaintiff left the company, the corporation exercised its option to buy back his shares at the price fixed by the accountants. In affirming the grant of summary judgment dismissing the negligence claim, this Court (per Tom, J.) found no indication that plaintiff ever met or even communicated with the accountants, or that the accountants were even aware that plaintiff owned company stock or that the stock would be repurchased by the employer client at a value fixed by the accountants. In sum, it found, the accountants' discharge of their routine responsibilities was completely unrelated to the corporation's purchase of plaintiff's stock (*Parrott v Coopers & Lybrand*, 263 AD2d 316 [2000]).

Justice Rosenberger, relying primarily upon *Credit Alliance Corp.*, but also citing *Astor Terrace* among numerous other cases, dissented in part and would have found that, at the least,

a question of fact existed as to whether the accountants knew that plaintiff left the company a month before they performed their latest analysis of the company's value (*Parrott*, 263 AD2d at 325-334).

Without mentioning *Astor Terrace*, the Court of Appeals affirmed in a short opinion (per Wesley, J.) noting that it had "previously rejected a rule 'permitting recovery by any "foreseeable" plaintiff who relied on [a] negligently prepared report, and [had] rejected even a somewhat narrower rule that would permit recovery where the reliant party or class of parties was actually known or foreseen' but the individual defendant's conduct did not link it to that third party" (*Parrott*, 95 NY2d at 485 [quoting *Ossining Union Free School District*, the same case cited by this Court in *Astor Terrace*]). Thus, *Parrott* merely adhered to well-settled legal principles and there is no conflict between *Parrott* and *Astor Terrace*, the only difference being the facts of each case. Clearly, if the Court of Appeals had intended to criticize or overrule our decision in *Astor Terrace*, it would have done so. Thus, *Parrott* in no way undermines our decision in *Astor Terrace*, which was recently cited with approval by this Court in *Castle Vil. Owners Corp. v Greater N.Y. Mut. Ins. Co.* (58 AD3d 178 [2008]), indicating that this Court still considers *Astor Terrace* good law and entitled to stare decisis effect in this Court long after *Parrott* was decided. There is no need for the majority to strain reason in order to avoid admitting that *Astor Terrace* was correctly decided on facts that are legally indistinguishable from those in this case.

Catterson and Renwick, JJ., concur with Moskowitz, J.; Tom, J.P., and Andrias, J., dissent in a separate opinion by Andrias, J.

Order, Supreme Court, New York County, entered October 9, 2007, reversed, on the law, with costs, the motion granted and the cause of action for negligent misrepresentation dismissed.